STATE BOARD OF TAX COM-
MISSIONERS, Appellant
(Respondent Below),

v.

INDIANAPOLIS RACQUET CLUB,
INC., Appellee (Petitioner
Below).

No. 49S10–0011–TA–631.

Supreme Court of Indiana.

March 6, 2001.

Karen M. Freeman–Wilson, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Stephen E. DeVoe, B. Keith Shake, Indianapolis, IN, Attorneys for Appellee.

## ON PETITION FOR REVIEW

BOEHM, Justice.

We hold that the Tax Court erred in concluding that Indiana Code section 6–1.1–31–6 requires the State Board of Tax Commissioners and the county land valuation commission to consider all of the listed factors as to each parcel. The State Board may adopt rules providing that actual sales of comparable properties may serve as a proxy for these factors. However, in this case we conclude that the Indianapolis Racquet Club has demonstrated that the county commission and the State Board failed to follow the State Board's rules in valuing IRC's land by including it among noncomparable properties in its land order. Accordingly, we remand to the State Board.

## Factual and Procedural Background

Indianapolis Racquet Club (IRC) is the owner of two parcels of property located in Washington Township at 82nd and Dean Road on the north side of Indianapolis.[1] The facility consists of sixteen indoor tennis courts, eight outdoor courts, and associated locker rooms and retail and administrative space. This litigation arises out of the 1989 assessments of IRC's property. Specifically, IRC maintains that this property was improperly classified in the Marion County Land Valuation Order as part of the "82nd Street Corridor" rather than designated "Township-other." Land in the "82nd Street Corridor" is assessed at a base rate of $3.00 to $4.00 per square foot, and land classified as "Township-other" is assessed at a base rate of $1.50 to $3.00 per square foot. After inclusion in the "82nd Street Corridor," IRC's land was assessed by the Washington township assessor at a base rate of $3.00 per square foot.

IRC petitioned for review with the Marion County Board of Review, and the Board ruled against it in late 1990 and early 1991. Further review by the State Board resulted in hearings in the fall of 1995 and final determinations adverse to IRC in the summer of 1996. IRC then petitioned the Tax Court, and, on January 31, 2000, the Tax Court ordered the petition remanded to the State Board. The Tax Court concluded that the Marion County Land Commission and the State Board had erred in classifying IRC's property as part of the "82nd Street Corridor" because they had failed to consider the nine statutory criteria listed in Indiana Code section 6–1.1–31–6. *Indianapolis Racquet Club, Inc. v. State Bd. of Tax Comm'rs,* 722 N.E.2d 926, 935 (Ind.Tax 2000). The Tax Court directed the State Board to reconsider the land classification using all of the statutory criteria and to

determine the appropriate base rate. *Id.* The State Board petitioned for review.

## Standard of Review

 Review of a decision of the Tax Court is subject to the same "clearly erroneous" standard of review as that provided in Indiana Trial Rule 52(A), which provides for appeal from trial court findings and conclusions. We consider the evidence most favorable to the judgment on appeal and do not reweigh the evidence. *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994). In conducting our review, we recognize that the Indiana Tax Court was established to develop and apply specialized expertise in the prompt, fair, and uniform resolution of state tax cases. *Indiana Dep't of State Revenue v. Caylor–Nickel Clinic, P.C.,* 587 N.E.2d 1311, 1313 (Ind.1992). Therefore, with regard to issues within the particular purview of the Tax Court, we exercise cautious deference. *Id.*

## I. Indiana Code Section 6–1.1–31–6 and Use of Actual Sales Data as a Proxy

Indiana Code section 6–1.1–31–6 provides:

(a) With respect to the assessment of real property, the rules of the state board of tax commissioners shall provide for:

(1) the classification of land on the basis of:

(i) acreage;

(ii) lots;

(iii) size;

(iv) location;

(v) use;

(vi) productivity or earning capacity;

(vii) applicable zoning provisions;

---

1. The State Board concedes that it inadvertently omitted from its "Petition for Review" caption a second party to this action, Racquet Square Associates (RSA). The State Board initially moved to amend its petition and then withdrew its motion. Accordingly, the State Board is not petitioning for review from the Tax Court's determinations affecting the assessment of RSA's property.

(viii) accessibility to highways, sewers, and other public services or facilities; and

(ix) any other factor that the board determines by rule is just and proper

. . . .

The Tax Court concluded that the commission and the State Board had erred in failing to consider all of the listed factors under subsection (a)(1) in arriving at the classification of IRC's property within the "82nd Street Corridor." The State Board counters that the statute does not support the position that all of these factors must be considered as to each land valuation order. Rather, the State Board argues that the statute requires only that it take these factors into consideration in promulgating its rules for assessment of real property. The State Board contends that the Tax Court erred in concluding each of the statutory factors must be applied by the local assessing authority to each individual parcel, and claims that such a requirement would create a substantial if not enormous administrative burden to no good end. The State Board's rules provide, in broad brush, that actual sales data of comparable properties, where available, reflect the sum of the effects of these factors on individual parcels. The State Board argues that it is within its expertise to promulgate rules providing for use of sales data as a proxy for the statutory factors, and that the existing rules establish an acceptable practice for making mass assessments.

Consistent with its position in this Court, the State Board has determined that land is to be assessed by comparison to actual sales of comparable properties, with adjustments to account for differences in frontage, improvements, depth, and similar factors to arrive at a value of land in the area. Ind.Admin.Code tit. 50, r. 2.1–2–1 to –2 (1987). Under this method, land value maps are developed that divide political subdivisions into neighborhoods "based on characteristics that distinguish [each] from surrounding neighborhoods, such as value ranges of improvements, zoning, or other restrictions on land use." *Id.*

The Tax Court found this practice inconsistent with the statute. Although it acknowledged that "[t]he plain language of the section does not concretely require the State Board to consider each of the nine factors in classifying land ... it could be reasonably interpreted to have such meaning." *IRC*, 722 N.E.2d at 933. Considered in light of the General Assembly's constitutional mandate to provide "for a uniform and equal rate of property assessment and taxation," Ind. Const. art. X, § 1, the Tax Court concluded, the "logical" interpretation is that the General Assembly intended for the State Board to consider the listed factors in "placing a particular parcel within a specific category of a land valuation order." *IRC*, 722 N.E.2d at 933.

All parties agree that the statute requires consideration of the listed factors in promulgating rules for assessing parcels. The statute says that in so many words. It reads: "[w]ith respect to the assessment of real property, the *rules* of the state board of tax commissioners shall provide for. . . ." I.C. § 6–1.1–31–6 (emphasis added). The State Board disagrees with the Tax Court in the next step of the analysis. The State Board contends that a rule providing a rational basis to value parcels in light of the statutory factors is sufficient. The Tax Court reasoned that a more particularized judgment is required and that the statutory factors must be evident as to each parcel. We agree with the State Board. We see no barrier to procedures designed to arrive at a fair assessment that reflects the statutory factors, but does not take each factor into account as to each individual parcel.

The statute does not use the term "land order." But land orders classifying parcels as to land valuation are adopted pursuant to the rules governing assessment promulgated by the State Board.

The rules of the State Board are found in title 50 of the Indiana Administrative Code, article 2.1, rule 2 (i.e., the "1989 Real Property Assessment Manual"), which details procedures for local assessors to follow in the valuation of land. As the Tax Court has frequently pointed out, land orders are initially proposed by county commissions, but become rules of the State Board after review by the Board. *IRC,* 722 N.E.2d at 931; *Precedent v. State Bd. of Tax Comm'rs,* 659 N.E.2d 701, 704 (Ind.Tax 1995); *Poracky v. State Bd. of Tax Comm'rs,* 635 N.E.2d 235, 236–37 (Ind.Tax 1994); *Mahan v. State Bd. of Tax Comm'rs,* 622 N.E.2d 1058, 1062 (Ind.Tax 1993); *Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue,* 568 N.E.2d 578, 586 (Ind.Tax 1991).

Although the legislature has dictated factors that must be considered in the State Board's rules for assessment of real property, it has left it to the Board's discretion to adopt rules that accomplish that end. In simple terms, the statute directs the goal, but not the means. This is standard operating procedure for administrative agencies. *Cf.* I Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 2.6, at 67 (3d ed. 1994) ("[The legislature] routinely delegates to agencies the power to make major policy decisions in the form of rules of conduct that bind all citizens. When [a legislative body] delegates authority to an agency, it accompanies that grant of power with substantive standards."). The State Board has followed the statutory directive. By rule, *see* 50 IAC 2.1–2–1 to –2, the State Board has adopted the procedure for the adoption of land orders, which themselves become rules if adopted pursuant to that procedure. The State Board has determined that use of comparable sales in formulating the land order meets the requirement to consider the relevant statutory factors. This is a far different proposition from the Tax Court's view that construes the statute to require every factor to be considered not only in the promulgation of the State Board's rules, as the statute

expressly provides, but also in the individual valuation of every parcel of land, unless the criterion is simply inapplicable.

We agree with the State Board and IRC that use of comparable sales is an appropriate assessment procedure, and that it is well within the discretion of the State Board to promulgate rules that give appropriate consideration to the nine statutory factors by looking to actual sales data, and making the rational assumption that the cumulative effect of the individual factors is reflected in the sales prices reached by buyers and sellers in the market. Accordingly, we disagree that the State Board or local assessors are required to assess each parcel in the light of the effect of each statutory factor on its valuation.

## II. The Land Order

Under its rules, the State Board has approved the use of actual market sales data as a proxy for some of the listed criteria of Indiana Code section 6–1.1–31–6. We agree with the State Board that this practice has been implicitly authorized by the General Assembly in the General Assembly's approval of generally accepted appraisal practices. *See* Ind.Code § 6–1.1–31–3(4) (1998) ("The state board of tax commissioners may consider: ... (4) generally accepted practices of appraisers, including generally accepted property assessment valuation and mass appraisal principles and practices...."). Under the State Board's own rules, however, the use of actual sales data presumes that the parcels included in the data are comparable to the property sought to be assessed. The rules demand first that neighborhoods be rationally identified: "Each neighborhood can be delineated based on characteristics that distinguish it from surrounding neighborhoods." Ind.Admin.Code tit. 50, r. 2.1–2–1(c) (1987). Second, the rules demand that values to be used for any given neighborhood be "determined by comparing several sales of similar properties." *Id.* Thus, the political subdivision must be correctly broken down into neighborhoods

consisting of comparable parcels of property and the parcels within a neighborhood must be comparable with those from which the sales data is derived.

IRC's principal contention is not that the 1989 Assessment Manual failed to account for the criteria set forth in Indiana Code section 6–1.1–31–6. Nor does IRC challenge the legitimacy of the State Board's rules. To the contrary, Stephen DeVoe, President of IRC, testified that, "we think as a taxpayer we're entitled to have the procedures in the manual followed." Consistent with this view, IRC's primary argument all along has been that its property differs significantly from the surrounding properties with which it has been grouped and that IRC would have been more properly classified as "other." In simple terms, IRC does not challenge the use of sales of comparable properties to establish the land values of its parcels. It simply contends that it was not grouped with comparable parcels when it was classified in the "82nd Street Corridor."

■ Because we agree that a land order may look to sales of comparable properties to determine assessment value, the issue in this case is whether the township assessor correctly classified IRC as part of the "82nd Street Corridor" and whether the State Board was correct in adhering to that determination. Kevin Fasick, the chief values deputy for the Washington Township's Assessor office in 1989, testified at trial that several characteristics of IRC had not been taken into account in its 1989 assessment. Notably it did not consider that one of the parcels did not abut 82nd Street and that neither parcel had direct access to 82nd Street. It is also significant that no consideration was given to the fact that, unlike the other properties in the area, IRC was zoned "SU–3," which does not allow the high-intensity retail traffic of the surrounding properties.

■ In reviewing a decision of the State Board, the Tax Court is to give great deference to the State Board when the Board acts within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1259, 1261 (Ind. Tax 1998). The Tax Court is to reverse a final determination of the State Board only when its decision is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, or exceeds statutory authority. *Id.* The taxpayer bears the burden of demonstrating that the State Board's final determination is invalid. *IRC,* 722 N.E.2d at 930 (citing *Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1233 (Ind.Tax 1998)). Because we have concluded that the State Board's rules require that properties within a land grouping be comparable and that sales data be obtained from the sale of properties that are truly comparable, we agree with the Tax Court that IRC has met its burden of demonstrating that the State Board's final determination was invalid. Specifically, the lack of frontage on 82nd Street and lack of access to 82nd Street differentiate it from the high value retail properties in the corridor. The same is true of IRC's zoning.

■ The State Board argues that, even if this Court determines that its final determination was invalid, IRC should still lose because IRC cannot prove that it was harmed by the land valuation order. Citing *State Board of Tax Commissioners v. Town of St. John,* 702 N.E.2d 1034, 1040 (Ind.1998), the State Board also notes that a taxpayer does not have a constitutional entitlement to a precisely accurate assessment of property. More specifically, the State Board notes that IRC's property was valued at a base rate of $3.00 per square foot, which is at the top of the range for property classified as "other" in Washington Township. Thus, even if IRC's property is reclassified as "other" it is possible that IRC's base rate will not change. We disagree with the State Board's conclusion that because of this possibility IRC has failed to establish that the State Board's final determination is invalid. The State Board admits the existence of several fac-

tors that devalue IRC's property in comparison with surrounding properties. It also concedes that these factors were not considered in the classification of IRC's property. If nothing else, it is clear that, if the local assessing authority had determined that IRC's property belonged to the "other" category, IRC would not have been worse off than it is now. We think it indisputable that, in order for a determination to be valid, both the initial classification and the base rate must have been derived according to the State Board's rules. *Cf. Zakutansky v. State Bd. of Tax Comm'rs*, 696 N.E.2d 494, 497 (Ind.Tax 1998) (remanding to State Board where incorrect cost schedule to assess buildings was used, although under the proper cost schedule the assessment might not vary significantly). Because IRC has proved that its classification was not arrived at according to the State Board's rules, it has carried its burden of showing that the State Board's final determination was invalid. It has also submitted evidence that suggests its property is neither comparable to surrounding properties nor the market data used as a proxy for the criteria of Indiana Code section 6–1.1–31–6. On remand, as the Tax Court pointed out, IRC "bears the burden of going forward with probative evidence concerning the proper classification of [its property] within the Order and the appropriate base rate to be assigned the parcels." *IRC*, 722 N.E.2d at 941.

### Conclusion

We remand to the State Board for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.