**WESTFIELD GOLF PRACTICE CENTER, LLC, Petitioner,**

v.

**WASHINGTON TOWNSHIP ASSESSOR, Hamilton County Assessor, and Hamilton County Property Tax Assessment Board of Appeals, Respondents.**

No. 49T10–0507–TA–54.

Tax Court of Indiana.

Jan. 5, 2007.

Jeffrey T. Bennett, Bradley D. Hasler, Bingham McHale, LLP, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Dawn D. Cummings, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondents.

FISHER, J.

Westfield Golf Practice Center, LLC (Westfield) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) valuing its real property

for the 2002 assessment year. Westfield maintains that its assessment violates Article X, Section I of the Indiana Constitution.

## FACTS AND PROCEDURAL HISTORY

Westfield owns approximately fifteen acres of land in Washington Township, Hamilton County, Indiana, on which it operates a commercial driving range. Approximately 11.644 acres of Westfield's land is "landing area" (i.e., the land upon which golf balls come to rest after being struck from the tees).

For the 2002 assessment, the Hamilton County Property Tax Assessment Board of Appeals valued Westfield's land at $403,800. In arriving at this value, Westfield's landing area was classified as "usable undeveloped" and assigned a rate of $35,100 per acre. Believing the assessment to be too high, Westfield filed a Petition for Review with the Indiana Board (Form 131) on February 19, 2004.

The Indiana Board held a hearing on Westfield's Form 131 on November 10, 2004. On May 26, 2005, the Indiana Board issued its final determination in which it denied Westfield's request for relief.

Westfield filed an original tax appeal on July 7, 2005. The Court heard the parties' oral arguments on October 13, 2006. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

█ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals*, 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2007).

## DISCUSSION AND ANALYSIS

Article X, Section 1 of the Indiana Constitution requires "[t]he General Assembly [to] provide, by law, for a uniform and equal rate of property assessment and taxation and [to] prescribe regulations to secure a just valuation for taxation of all property, both real and personal." IND. CONST. ART. 10, § 1(a). This provision has long been held to require: (1) uniformity and equality in assessment, (2) uniformity and equality as to the rate of taxation, and (3) a just valuation for taxation of all property. *See Indianapolis Historic Partners v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1224, 1228 (Ind. Tax Ct.1998) (citation omitted).

█ Westfield contends that its assessment violates Article X, Section 1 because it is not uniform and equal. More specifically, Westfield asserts that its assessment lacks uniformity and equality because its property is assessed differently than other comparable properties located in Hamilton County. (*See* Oral Argument Tr. at 4–6, 25–26; Pet'r Reply Br. at 1–2.) To support its argument, Westfield submitted the property record cards on five other driving ranges (four of which were located upon

golf courses). (*See* Cert. Admin. R. at 162–97.) Westfield explains that while its landing area was assessed at $35,100 per acre, the landing areas at the other driving ranges were assessed using a golf course rate of $1,050 per acre.[1] (*See* Cert. Admin. R. at 162–97, 248–54; Pet'r Br. at 3 (footnote added).) Westfield's argument, however, confuses what it means to be "uniform and equal" under Indiana's current assessment system and, as a result, it has "duffed" the proverbial ball.

Prior to 2002, property in Indiana was assessed on the basis of its "true tax value." IND.CODE ANN. § 6–1.1–31–6(c) (West 2000) (amended 2002). True tax value was determined under Indiana's own assessment regulations and bore no relation to any external, objectively verifiable standard of measure. *See id. See also Town of St. John v. State Bd. of Tax Comm'rs,* 665 N.E.2d 965, 967 (Ind. Tax Ct.1996) ("*St. John I* "), *rev'd in part on other grounds by Boehm v. Town of St. John,* 675 N.E.2d 318 (Ind.1996). Consequently, because determination of a property's assessed value was inextricably entangled with how the regulations were applied, the only way to determine the uniformity and equality of assessments was to determine whether the regulations were applied similarly to comparable properties. *See Town of St. John v. State Bd. of Tax Comm'rs,* 690 N.E.2d 370, 377–78 (Ind. Tax Ct.1997) ("*St. John III* "), *rev'd in part on other grounds by* 702 N.E.2d 1034 (Ind.1998).

Specifically, under Indiana's pre–2002 regulations, land values were determined through the application of land orders. 50 IND. ADMIN. CODE 2.2–4–2, –6 (1996) (re-

pealed 1998). The land orders were developed by collecting and analyzing comparable sales data for given areas. *See* A.I.C. § 6–1.1–31–6(a). *See also State Bd. of Tax Comm'rs v. Indianapolis Racquet Club, Inc.,* 743 N.E.2d 247, 251 (Ind.2001). More specifically, each county had a land valuation commission that collected and analyzed sales data on non-agricultural (i.e., residential, commercial, and industrial) land within the county, and, on the basis of that data, recommended a range of values for property in certain areas. *See* 50 IND. ADMIN. CODE 2.2–4–5 (1996) (repealed 2002). These values were either accepted or modified by the State Board of Tax Commissioners (State Board), without further input from the county commissions. *See* 50 IND. ADMIN. CODE 2.2–4–3(a) (1996) (repealed 1998). The State Board's final figures were then compiled in a county land valuation order.

The commercial or industrial land values contained within a land order were typically expressed in ranges of "base rates" of four classes of land (i.e., primary, secondary, usable undeveloped, unusable undeveloped) that were applied to various geographic areas, subdivisions, or neighborhoods based on distinguishing characteristics or boundaries. *See* 50 IND. ADMIN. CODE 2.2–4–17(a), (b) (1996) (repealed 2002). Consequently, properties within each geographic area, subdivision, or neighborhood in a land order were presumed to be comparable, both in distinguishing characteristics and in market value. *See Indianapolis Racquet Club,* 743 N.E.2d at 251–52. Therefore, the principles of uniformity and equality in assessment and taxation were violated when

---

**1.** Alternatively, Westfield argues that its landing area should have been classified as "secondary" and assessed at $17,500 per acre, similar to another driving range that was classified as "secondary" and assessed at $22,000 per acre. *(See* Cert. Admin. R. at 199–207, 256–57; Pet'r Br. at 3.) Finally,

Westfield explains it would also be entitled to a negative twenty-five percent (25%) influence factor reduction to account for its land's size, lack of utilities, and misimprovement (i.e., development as a driving range among industrial properties). *(See* Cert. Admin. R. at 259–61.)

comparable properties were assessed and taxed differently. *See generally, Indiana State Bd. of Tax Comm'rs v. Lyon & Greenleaf Co.*, 172 Ind.App. 272, 359 N.E.2d 931 (1977); *Zakutansky v. State Bd. of Tax Comm'rs*, 691 N.E.2d 1365 (Ind. Tax Ct.1998); *Harrington v. State Bd. of Tax Comm'rs*, 525 N.E.2d 360 (Ind. Tax Ct.1988); *Meridian Hills Country Club v. State Bd. of Tax Comm'rs*, 512 N.E.2d 911 (Ind. Tax Ct.1987).

Beginning in 2002, however, Indiana's overhauled property tax assessment system incorporates an external, objectively verifiable benchmark—market value-in-use.[2] As a result, the new system shifts the focus from examining how the regulations were applied (i.e., mere methodology) to examining whether a property's assessed value actually reflects the external benchmark of market value-in-use. *See* 50 Ind. Admin. Code 2.3–1–1(d) (2002 Supp.). Thus, Indiana's current assessment guidelines explain the assessment process and provide a *starting point* for an assessor to determine a property's market value-in-use. *See* Real Property Assessment Guidelines for 2002—Version A (hereinafter Guidelines) (incorporated by reference at 50 Ind. Admin. Code 2.3–1–2 (2002 Supp.)), Books 1 and 2, Book 1 at 1. Indeed, with respect to selecting base rates for land valuation, the Guidelines stress that "the pricing method for valuing the neighborhood is of less importance than arriving at the *correct* value of the land as of the valuation date." Guidelines, Book 1, Chapter 2 at 16 (emphasis added).

In other words, the overarching goal of Indiana's new assessment scheme is to measure a property's value using objectively verifiable data. *See Eckerling v. Wayne Twp. Assessor*, 841 N.E.2d 674, 677–78 (Ind. Tax Ct.2006) (explaining that a taxpayer cannot rebut the presumption that his assessment is correct without presenting evidence of his property's market value-in-use). As such, "[t]he end result—a 'uniform and equal rate' of assessment—is required, but there is no requirement of uniform procedures to arrive at that rate." *See State ex rel. Att'y Gen. v. Lake Superior Court*, 820 N.E.2d 1240, 1250 (Ind.2005) (*cert. denied*) (emphasis added). Here, Westfield has solely focused on the methodology used to determine its assessment. Westfield has not shown what its property's actual market value-in-use is, nor, has it shown the actual market value-in-use of any comparable properties.[3] Accordingly, Westfield has not established that its assessment violates Article X, Section I of the Indiana Constitution.

## CONCLUSION

For the above stated reasons, the Indiana Board's final determination is AFFIRMED.

---

**2.** "[Market value-in-use] may be thought of as the ask price of property by its owner[.] ... In markets in which sales are not representative of utilities ... true tax value will not equal value in exchange. In markets where there are regular exchanges, so that ask and offer prices converge, true tax value will equal value in exchange[.]" 2002 Real Property Assessment Manual (hereinafter, Manual) (incorporated by reference at 50 Ind. Admin. Code 2.3–1–2 (2002 Supp.)) at 2. *See also* Ind.Code Ann. § 6–1.1–31–6(c) (West 2002).

**3.** Under Indiana's new assessment system, when a taxpayer challenges the uniformity and equality of his or her assessment *one* approach that he or she may adopt involves the presentation of assessment ratio studies, which compare the assessed values of properties within an assessing jurisdiction with objectively verifiable data, such as sales prices or market value-in-use appraisals. *See* Manual at 6, 24–26 (emphasis added).