William W. THORSNESS, Petitioner,

v.

PORTER COUNTY ASSESSOR, Respondent.

No. 49T10–1102–TA–14.

Tax Court of Indiana.

Jan. 23, 2014.

Michael C. Harris, Harris Welsh & Lukmann, Chesterton, IN, Attorney for Petitioner.

Christopher A. Buckley, Gordon A. Etzler, Gordon A. Etzler & Associates, LLP, Valparaiso, IN, Attorneys for Respondent.

WENTWORTH, J.

William W. Thorsness appeals from the final determination of the Indiana Board of Tax Review regarding his 2007 real property assessment. The Court affirms the Indiana Board's final determination.

## FACTS AND PROCEDURAL HISTORY

Thorsness owns residential property in Dune Acres, Indiana. Dune Acres, situated on the southern shore of Lake Michigan in Westchester Township, Porter County, is a small, upscale community consisting of approximately 155 homes.

Thorsness purchased his property on January 31, 2007, for $1,650,000. For the March 1, 2007, assessment date, the Assessor assessed the property at $1,647,800. Thorsness subsequently appealed to the Porter County Property Tax Assessment Board of Appeals (PTABOA). When the PTABOA denied his appeal, Thorsness filed an appeal with the Indiana Board.

The Indiana Board conducted an administrative hearing on October 7, 2010. During the hearing, Thorsness argued that his assessment failed to comport with the "uniform and equal" mandate of Indiana's constitution: while his property was assessed at 99.9% of its sales price, six other residential properties in Dune Acres were assessed at, on average, 79.5% of their recent sales prices. To support his claim, Thorsness presented a one-page spreadsheet that listed: 1) the addresses of the six other properties in Dune Acres; 2) the dates in 2005 and 2006 that each of the six properties were sold and their reported sales prices; 3) the properties' 2006 and 2007 assessed values; and 4) the ratio of each property's sales price to its assessed value. (*See* Cert. Admin. R. at 155.) Based on this evidence, Thorsness requested that the Indiana Board reduce his assessment to $1,311,750 (*i.e.*, 79.5% of his $1,650,000 purchase price) so that he would be "treated exactly like his neighbors ... sharing the burden of [the cost of] government e[qually] along with [the]m." (Cert. Admin. R. at 190.)

On December 29, 2010, the Indiana Board issued a final determination affirming the Assessor's assessment. In its final determination, the Indiana Board acknowledged that "[a] lack of uniformity and equality in a mass-appraisal assessment ... may be inferred from analyzing the ratios of assessment to sale price[s] for a subgroup of properties within [a] class or stratum" and "[w]here [such] a ratio study shows that a given property is assessed above the common level of assessment, that property's owner may be entitled to an equalization adjustment." (Cert. Admin. R. at 119 ¶ e (citations omitted).) The Indiana Board went on to explain, however, that ratio studies involve sophisticated statistical comparisons, are made in conformance with professionally accepted standards, and are based on a statistically reliable sample of properties. (Cert. Admin. R. at 119 ¶ f (citations omitted).) The Indiana Board found that because Thorsness's "ratio study" did not meet these criteria, it was not probative in demonstrating that his property was inequitably or non-uniformly assessed. (*See* Cert. Admin. R. at 119–21 ¶¶ f-h, k.)

Thorsness filed an original tax appeal on February 10, 2011. The Court heard oral arguments on August 12, 2011. Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

■ The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. *Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). Accordingly, that party must demonstrate to the Court that the Indiana Board's final determination is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE § 33–26–6–6(e)(1)–(5) (2014).

## LAW

Article X, Section 1 of the Indiana Constitution—known as the Property Taxation Clause—directs the General Assembly to "provide, by law, for a uniform and equal rate of property assessment and taxation and ... prescribe regulations to secure a just valuation for taxation of all property." IND. CONST. art. X, § 1(a). *See also Fesler v. Bosson*, 189 Ind. 484, 128 N.E. 145, 147 (1920) (explaining that the Property Taxation Clause establishes three basic and interlocking propositions: "(1) Uniformity and equality in assessment; (2) uniformity and equality as to rate of taxation; and (3) a just value for taxation"). The Indiana Supreme Court has explained that

[t]he first clause of [Article 10, Section 1] is certainly complied with when the same basis of assessment is fixed for all property, and the same rate of taxation is fixed within the district subject to taxation.... As to the latter clause ... providing that the [G]eneral [A]ssembly "shall prescribe such regulations as shall secure a just valuation for taxation," it leaves it to the [L]egislature to prescribe the mode by which the valuation of all property shall be ascertained, en-

joining upon them the one obligation to provide such regulations as shall secure a just valuation.[1]

*Cleveland, C., C. & St. L. Ry. Co. v. Backus*, 133 Ind. 513, 33 N.E. 421, 428 (1893); *Pittsburgh, C., C. & St. L. Ry. Co. v. Backus*, 133 Ind. 625, 33 N.E. 432, 439 (1893) (footnote added).

■ One way to measure uniformity and equality in property assessment is through an assessment ratio study. *Westfield Golf Practice Ctr., LLC v. Washington Twp. Assessor*, 859 N.E.2d 396, 399 n. 3 (Ind. Tax Ct.2007). An assessment ratio study "compare[s] the assessed values of properties within an assessing jurisdiction with objectively verifiable data, such as sales prices or market value-in-use appraisals." *Id.* (citation omitted). When such a study demonstrates that there is a lack of uniformity and equality in property assessments within the assessing jurisdiction, "the equalization process provides ... a method to cure [the] assessment problems and bring all assessments into compliance with Article X, § 1." *GTE N. Inc. v. State Bd. of Tax Comm'rs*, 634 N.E.2d 882, 886 (Ind. Tax Ct.1994) (citation omitted). Through the equalization process, property assessments of certain taxpayers are adjusted so that they bear the same relationship of assessed value to market value as other properties within that jurisdiction. *See id.* The Indiana Constitution's Property Taxation Clause, however, does not guarantee a taxpayer the personal right to "absolute and precise exactitude as to the uniformity and equality of each

---

1. All Indiana real property is assessed on the basis of its "market value-in-use." *See* IND. CODE § 6–1.1–31–6(c) (2007); 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (Manual) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.) at 2. A property's market value-in-use is, in many instances, its market value (*i.e.*, the "most

probable price (in terms of money) which [the] property should bring in a competitive and open market under all conditions requisite to a fair sale." *See Millennium Real Estate Inv., LLC v. Benton Cnty. Assessor*, 979 N.E.2d 192, 196 n. 3 (Ind. Tax Ct.2012) (*citing* Manual at 10), *review denied.*

individual assessment." *State Bd. of Tax Comm'rs v. Town of St. John,* 702 N.E.2d 1034, 1040 (Ind.1998). *See also Smith v. Carbon Cnty. Bd. of Assessment Appeals,* 10 A.3d 393, 400 (Pa.Cmwlth.Ct.2010) (explaining that because taxation is not a matter of exact science, the constitutional uniformity requirement cannot be met with absolute equality and perfect uniformity; "[p]ractical inequities [must be] anticipated, and as long as the taxing method does not impose substantially unequal tax burdens, rough uniformity with a limited amount of variation is permitted" (quotation marks and citations omitted)).

## ANALYSIS

Thorsness presents two issues on appeal. First, he claims that the Indiana Board erred in determining that he, and not the Assessor, bore the burden of proof at the administrative hearing. Second, Thorsness claims that the Indiana Board erred in determining that his evidence was not probative in demonstrating that the Assessor's assessment lacked uniformity.

## I.

Prior to 2009, a taxpayer who challenged his property tax assessment always bore the burden of proof. *See* Ind.Code § 6–1.1–15–1(m)(2) (2008) (indicating that a taxpayer that initiates a property tax appeal must "prosecute" the review). *See also* 2002 Real Property Assessment Manual (2004 Reprint) (Manual) (incorporated by reference at 50 Ind. Admin. Code 2.3–1–2 (2002 Supp.)) at 5 (explaining that an assessment made pursuant to its guidelines is presumed accurate unless the taxpayer demonstrates otherwise). In 2009, however, the General Assembly established an exception to that rule by adding subsection (p) to Indiana Code § 6–1.1–15–1:

[I]f the assessment for which a notice of review is filed increased the assessed value of the assessed property by more than five percent (5%) over the assessed value finally determined for the immediately preceding assessment date[,] [t]he county assessor or township assessor making the assessment has the burden of proving that the assessment is correct.

Ind.Code § 6–1.1–15–1(p) (eff. July 1, 2009) (repealed 2011). This statute contains what is commonly referred to as "the burden-shifting rule."

Thorsness claims on appeal that at the time of his Indiana Board hearing in 2010, Indiana Code § 6–1.1–15–1(p) clearly applied to his case because his property's assessment had increased by more than 5% from 2006 and 2007. He asserts, therefore, that the Indiana Board erred when it held in its final determination that under the statute, the burden shifted to the Assessor at the PTABOA level only, and not at the Indiana Board level. (*Compare* Pet'r Br. at 8–12 *with* Cert. Admin. R. at 114–117 ¶¶ 19(a)-(f).)

Just recently, this Court explained the proper application of the burden-shifting rule. *See Orange Cnty. Assessor v. Stout,* 996 N.E.2d 871, 873–75 (Ind. Tax Ct.2013). Pursuant to the Court's holding in *Stout,* the Indiana Board interpreted Indiana Code § 6–1.1–15–1(p) incorrectly. *See id.* Nonetheless, the Indiana Board's mistake does not constitute reversible error in this case because the burden-shifting rule contained in Indiana Code § 6–1.1–15–1(p) (and its progeny) applies only to valuation challenges, not to uniform and equal constitutional challenges for the following reasons.

The language of Indiana Code § 6–1.1–15–1(p) is clear and unambiguous, and the Court will not expand or contract its meaning by reading into it language

that is not there. *See Kohl's Dep't Stores, Inc. v. Indiana Dep't of State Revenue,* 822 N.E.2d 297, 300 (Ind. Tax Ct.2005). Indiana Code § 6–1.1–15–1(p) clearly states that when an assessment increases by more than 5% from one year to the next, an assessor "has the burden of proving that *the assessment is correct.*" I.C. § 6–1.1–15–1(p) (emphasis added). In Indiana, a property's assessment is the value placed on the property that reflects its market value-in-use (*i.e.,* its market value). *See supra* note 1. *See also* Manual at 8 (defining "assessment" as the market value-in-use that is officially assigned to the property by an assessing official/body, or a court). Thus, the burden-shifting rule does not apply unless the claim is that a property's assessment does not reflect its market value-in-use. This is not Thorsness's claim. (*See, e.g.,* Cert. Admin. R. at 184–86, 189–90; Pet'r Reply Br. at 6; Oral Arg. Tr. at 5–6 (where Thorsness admits that his assessment is correct)).

Instead, by claiming that his assessment lacks uniformity and equality, the remedy Thorsness seeks is not one of "correctness," but is, in effect, one of "incorrectness." Indeed, Thorsness's claim calls for an evaluation of how his property's assessment compares to its market value in relation to how the assessments of other properties within the assessing jurisdiction compare to their market values. In other words, Thorsness wants his otherwise correct property assessment to be reduced by 20.5% so that it is on par with the assessment to market value ratios of other properties in Dune Acres. Indiana Code § 6–1.1–15–1(p), however, does not apply to the relational evaluation required by a uniformity and equality claim that seeks an equalization adjustment.

The Indiana Board determined that Thorsness bore the burden of proof at its administrative hearing. This result was right, although the Indiana Board was wrong in how it arrived at that result. Consequently, the Court will not reverse the Indiana Board's final determination on this basis.

## II.

■ Thorsness also contends that the Indiana Board erred when it determined that he did not present probative evidence to demonstrate that the Assessor's assessment lacked uniformity. To the contrary, Thorsness claims that because his spreadsheet contained "virtually every sale [in Dune Acres] ... [that] sold in the two years prior to the assessment of March 1, 2007[, it] ... is [a] statistically reliable [ratio study that] demonstrate[s] systematic under-assessment" of the residential property in Dune Acres." (Pet'r Br. at 2, 13.) (*See also* Oral Arg. Tr. at 5, 8 (referring to the spreadsheet as an assessment ratio study).)

The Department of Local Government Finance (DLGF)—the administrative agency charged with ensuring that Indiana's property assessments are uniform and equal[2]—has provided guidance about how to compile and evaluate the data necessary for an assessment ratio study. More specifically, the DLGF has, through its duly promulgated administrative regulations, incorporated into law the International Association of Assessing Officers' *Standard on Ratio Studies. See* 50 IND. ADMIN. CODE 14–1–1, 14–2–1 (2007) (*see* http://www.in.gov/legislative/iac/).

Pursuant to the *Standard,* a valid assessment ratio study must be based on data that has been both appropriately stratified and statistically analyzed. *See* INT'L ASS'N ASSESSING OFFICERS, *Standard on Ra-*

---

**2.** *See* IND.CODE § 6–1.1–30 (2007).

*tio Studies* 9 (1999) (hereinafter *"Standard"*).[3] For example, the *Standard* provides that all the properties within the taxing district that fall within the scope of the study must be divided (*i.e.*, stratified) into two or more subpopulations. *See id.* at 10. The DLGF has determined that for purposes of measuring assessment uniformity in Indiana, assessment ratio studies must stratify properties by property class within each township. *See* 50 IND. ADMIN. CODE 14–5–1 (2007) (*see* http://www.in.gov/legislative/iac/) (delineating the property classes within townships as improved residential, unimproved residential, improved commercial, unimproved commercial, improved industrial, unimproved industrial, and agricultural land).

The *Standard* further explains that a statistical measure of assessment uniformity must be calculated for the entire taxing district and each stratum therein. *See Standard* at 24, 36. The most widely accepted statistical measure of tax assessment uniformity is the "coefficient of dispersion," which indicates the average deviation from the median sale/assessment ratio.[4] *See id.* at 24–25, 36, 38. The DLGF has declared the *Standard's* coefficient of dispersion to be the yardstick by which assessment uniformity is measured in Indiana's townships. *See* 50 IND. ADMIN.

CODE 14–7–1 (2007) (*see* http://www.in.gov/legislative/iac/). *See also* Manual at 6, 20–22.

In reviewing the record, the Court cannot conclude that the Indiana Board erred by determining that Thorsness's ratio study did not demonstrate that the Assessor's assessment lacked uniformity. Thorsness's evidence indicated that there were six residential properties in Dune Acres that apparently were assessed, and therefore taxed, at a lower percentage of market value than his property. While this evidence is no doubt relevant, the Indiana Board did not err in determining that it was not probative in demonstrating that Thorsness's property was assessed and taxed at a level that exceeded the common level within Westchester Township overall. Accordingly, the Court will not reverse the Indiana Board's final determination on this basis.[5]

### CONCLUSION

For the foregoing reasons, the Indiana Board's final determination in this matter is AFFIRMED.

---

3. A copy of the *Standard* can be obtained from the DLGF's website at http://www.in.gov/dlgf/files/Reports_LaPorteCounty IAAOStandardonRatioStudies(13).pdf.

4. The *Standard* explains that if the coefficient of dispersion is 0.15(15%) or less for single-family residences within a taxing district, the assessments are considered uniform. *See* INT'L ASS'N ASSESSING OFFICERS, *Standard on Ratio Studies* 36 (1999). If the coefficient of dispersion is above these levels, however, then the assessments are non-uniform and must be equalized. *Id.*

5. The Court notes that Thorsness has argued, in the alternative, that his assessment should

at the least be reduced to $1,499,371, which represents a 3% increase from the previous owner's 2006 property assessment of $1,455,700. (*See* Cert. Admin. R. at 5, 205–06.) Thorsness's argument is based on the fact that the assessed values of the six other properties increased by an average of only 3% between 2006 and 2007, while his property's assessed value increased by 13.2% during the same period. (*See* Cert. Admin. R. at 155.) For the same reasons the Court reached its conclusion above, the Court finds that this argument does not rise to the level of demonstrating a lack of uniformity and equality of assessment in Westchester Township.