HURRICANE FOOD, INC., Petitioner,

v.

WHITE RIVER TOWNSHIP
ASSESSOR, Respondent.

No. 49T10–0412–TA–56.

Tax Court of Indiana.

Nov. 3, 2005.

Timothy J. Vrana, Attorney at Law, Columbus, for Petitioner.

Steve Carter, Attorney General of Indiana, Kristen M. Kemp, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, J.

Hurricane Food, Inc. (Hurricane) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) valuing its real property for the March 1, 2002 assessment date. The sole issue before the Court is whether the Indiana Board erred in valuing Hurricane's improvement.

## FACTS AND PROCEDURAL HISTORY

Hurricane owns a fast food restaurant in Johnson County, Indiana. The property was constructed in 1990. For the 2002 assessment date, the White River Township Assessor (Assessor) assigned Hurricane's property an assessed value of $634,200 ($297,300 for land and $336,900 for improvements). In arriving at that value, the Assessor assigned Hurricane's improvement an effective age of less than one year, and a condition rating of "average." Accordingly, Hurricane's improvement received no adjustment for physical depreciation.

Believing its assessment to be too high, Hurricane subsequently filed a Petition for Review of Assessment (Form 130) with the Johnson County Property Tax Assessment Board of Appeals (PTABOA). In its Form 130, Hurricane challenged the computation of its improvement's effective age. Specif-

ically, Hurricane claimed that its improvement's effective age should be eight and, with a condition rating of "average," it was entitled to a 35% physical depreciation adjustment. Hurricane explained that the 35% physical depreciation adjustment would reduce the value of its improvement to $226,700. (*See* Cert. Admin. R. at 52–53.)

On October 24, 2003, after conducting a hearing on the matter, the PTABOA recommended no change to the assessment. In so doing, it explained that Hurricane had indicated at the hearing that it purchased the property in 1997 for $700,000.[1] Accordingly, the PTABOA determined that "th[at] sale price . . . is considered the [property's] best indication of value." (Cert. Admin. R. at 7.)

Hurricane filed a Petition for Review of Assessment with the Indiana Board (Form 131) on November 18, 2003. In its Form 131, Hurricane again challenged the computation of its improvement's effective age. The Indiana Board held a hearing on Hurricane's Form 131 on August 19, 2004. On November 9, 2004, the Indiana Board issued its final determination in which it denied Hurricane's request for relief, stating that "[the] market data tends to support the total current assessed value of $634,200." (Cert. Admin. R. at 22.)

Hurricane filed an original tax appeal on December 17, 2004, and the Court heard the parties' oral arguments on August 5, 2005.[2] Additional facts will be supplied as necessary.

---

1. More specifically, Hurricane stated that "[t]he subject property was purchased for $700,00 on 09/05/97. This $700,000 was for: $150,000 = Land[;] $160,000 = for Site Improvements[;] $210,000 = for the building[; and] $180,000 = for [e]quipment[.]" (Cert. Admin. R. at 10.)

2. Initially, Hurricane also challenged the value of its land. Hurricane, however, withdrew that issue from the Court's consideration at oral argument. (*See* Oral Argument Tr. at 3.)

## STANDARD OF REVIEW

██ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Miller Village Prop. Co. v. Indiana Bd. of Tax Review*, 779 N.E.2d 986, 988 (Ind.Tax Ct.2002), *review denied*. Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(2) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND. CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2005).

██ The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *Osolo Township Assessor v. Elkhart Maple Lane Assocs. L.P.*, 789 N.E.2d 109, 111 (Ind.Tax Ct.2003). In order to meet that burden, the party seeking reversal must have submitted, during the administrative hearing process, probative evidence regarding the alleged assessment error. *Id.* (footnote omitted). If that party meets its burden of proof and prima facie establishes that the Indiana Board's final deter-

mination is erroneous, the burden then shifts to the opposing party to rebut the challenging party's evidence. *See Meridian Towers East & West v. Washington Township Assessor*, 805 N.E.2d 475, 479 (Ind.Tax Ct.2003).

## DISCUSSION AND ANALYSIS

██ Under Indiana's assessment system, real property is assessed on the basis of its "true tax value." "True tax value" does not mean fair market value, but rather "[t]he market value-in-use of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property." IND. CODE ANN. § 6–1.1–31–6(c) (West Supp.2005–2006); 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)) at 2. In turn, a property's market value-in-use "may be thought of as the ask price of property by its owner, because this value . . . represents the utility obtained from the property, and the ask price represents how much utility must be replaced to induce the owner to abandon the property." [3] Manual at 2 (footnote added).

██ Three generally accepted appraisal techniques may be used to calculate a property's market value-in-use. *See id.* at 3. More specifically:

The first approach, known as the *cost approach*, estimates the value of the land as if vacant and then adds the depreciated cost new of the improve-

---

**3.** "In markets in which sales are not representative of utilities, either because the utility derived is higher than indicated sale prices, or in markets where owners are motivated by non-market factors such as the maintenance of a farming lifestyle even in the face of a higher use value for some other purpose, true tax value will not equal value in exchange. In markets where there are regular exchanges, so that ask and offer prices converge, true tax value will equal value in exchange[.]" 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)) at 2.

ments to arrive at a total estimate of value. The second approach, known as the *sales comparison approach,* estimates the total value of the property directly by comparing it to similar, or comparable, properties that have sold in the market. The third approach, known as the *income approach,* is used for income producing properties that are typically rented. It converts an estimate of income, or rent, the property is expected to produce into value through a mathematical process known as capitalization.

*Id.* Indiana recognizes, however, that because "assessing officials are faced with the responsibility of valuing all properties within their jurisdictions during a reassessment[, they] often times do not have the data or time to apply all three approaches to each property." *Id.* Accordingly, the primary method for Indiana assessing officials to determine a property's market value-in-use is the cost approach.[4] To that end, Indiana (through the now non-existent State Board of Tax Commissioners) has promulgated a series of guidelines that explain the application of the cost approach in detail. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (2004 Reprint) (hereinafter, Guidelines), Books 1 and 2.[5]

■ A property's market value-in-use (i.e., true tax value) as ascertained through an application of the Guidelines' cost approach is presumed to be accurate. *See* Manual at 5. Nevertheless, that presumption is rebuttable. Thus, a taxpayer

shall be permitted to offer evidence relevant to the fair market value-in-use of the property to rebut such presumption and to establish the actual true tax value of the property as long as such information is consistent with the definition of true tax value provided in this [M]anual and was readily available to the assessor at the time the assessment was made. Such evidence may include actual construction costs, sales information regarding the subject or comparable properties, appraisals that are relevant to the market value-in-use of the property, and any other information compiled in accordance with generally accepted appraisal principles.

*Id.*

■ Whatever approach is utilized, the Manual provides that the goal, or end-result, should be the same: to ascertain a property's market value-in-use. Consequently, while "[a]ll three [ ] approaches, when properly processed, should produce approximately the same estimate of value[,]" *id.* at 3, "situations may arise that are not explained or that result in assessments that may be inconsistent with [the]

---

4. "[T]he cost approach has historically been used in mass appraisal by assessing officials since data is available to apply it to all properties within a jurisdiction." *Id.* at 3.

5. "The calculation of cost [under the Guidelines, however,] is merely the starting point for estimating the true tax value of the improvements or structures. It sets the upper limit of value for the improvements." REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (2004 Reprint) (hereinafter, Guidelines), Book 1 at 1. Furthermore,

[t]he purpose of [the Manual/Guidelines] is to accurately determine "True Tax Value" . . . not to mandate that any specific assessment method be followed. . . . No technical failure to comply with the procedures of a specific assessing method violates this rule so long as the individual assessment is a reasonable measure of "True Tax Value[,]" and failure to comply with the . . . Guidelines . . . does not in itself show that the assessment is not a reasonable measure of "True Tax Value[.]"

IND. ADMIN. CODE tit. 50, r. 2.3–1–1(d) (2002 Supp.).

definition [of market value-in-use]. In those cases the assessor shall be expected to adjust the assessment to comply with this definition[.]" *Id.* at 2.

Hurricane asserts that pursuant to instructions set forth in the Guidelines' cost approach, its improvement should have an effective age of 8 and, therefore, it is entitled to a greater physical depreciation adjustment. It complains, however, that the Indiana Board has simply "thumb[ed][its] nose[ ] at th[is] rule of law." (*See* Oral Argument Tr. at 6.) The Court, however, disagrees.

 The market value-in-use of an improvement must reflect, among other things, the presence of any physical depreciation. *See* Guidelines, Book 2, App. F at 4. Physical depreciation "is [the] loss in value caused by the building materials wearing out over time. It may be caused by wear and tear, use or abuse, action of the elements, and/or insect infestation." *Id.* Pursuant to the Guidelines' cost approach, determining the degree of physical depreciation from which a fast food restaurant suffers involves, at its most basic level, a comparison of the improvement's condition [6] relative to its age. *See id.* at 4–6, 24, 36–38 (footnote added).

 Admittedly, under the Guidelines, a fast food restaurant with an actual age of nine [7] and a condition rating of "average" has an effective age of eight. *See id.* at 24 (demonstrating that an improvement's ef-fective age is determined by a mere correlation of the improvement's actual age and condition on the Guidelines' "Actual Age to Effective Age Conversion Table"). In turn, a fast food restaurant with an effective age of eight is entitled to a 35% physical depreciation adjustment. *See id.* at 38 (the Guidelines' "Special Use Commercial Property Depreciation" Table). Nevertheless, as the Assessor has argued, the use of "strict methodology" is misplaced when other evidence indicates that the property's assessment should be adjusted. (*See* Cert. Admin. R. at 72.)

 In this case, the Assessor explains that it was necessary to "tweak" Hurricane's assessment (as determined through an application of the Guidelines' cost approach) in order to bring the value more in line with the property's 1997 purchase price of $700,000. In so doing, the Assessor adjusted the effective age on Hurricane's improvement, which in turn eliminated its physical depreciation adjustment.

 In theory, the Assessor is correct. As indicated earlier, the goal under Indiana's property assessment scheme is to determine a property's market value-in-use. Accordingly, assessing officials are permitted to make whatever adjustments are necessary to bring an assessment made under the Manual/Guidelines' cost approach more in line with other probative evidence as to a property's market value-in-use. Manual at 2–3. In this case, such evidence was available.[8]

---

6. An improvement's condition rating must reflect the improvement's "wear and tear" relative to its age, taking into account the degree of maintenance and modernization to the improvement. *See* Guidelines, Book 2, App. F at 23.

7. For purposes of the 2002 assessment, an improvement's actual age is the difference between its date of construction and January 1, 1999. *See id.* at 5. Thus, Hurricane's improvement's actual age is nine (1999–1990).

8. When a party submits evidence to demonstrate that a property's true tax as determined under the Guidelines' cost approach is not an accurate indicator of its market value-in-use, the evidence must be properly supported. *See Kooshtard Property VI, LLC v. White River Township Assessor*, 836 N.E.2d 501, 506 n. 6 (Ind. Tax Ct., 2005). To the extent that the Assessor in this case deemed Hurricane's evidence regarding the property's purchase price

In application, however, the Assessor's assessment is incorrect. In reconciling the current assessment against the $700,000 purchase price, both the Assessor and the Indiana Board obviously included the $180,000 that reflected the purchase of tangible personal property. *See* fn. 1, *supra.* The valuation and assessment of personal property, however, is separate and distinct from the valuation and assessment of real property. Accordingly, the Assessor and the Indiana Board should have compared the overall assessment of Hurricane's improvement ($336,900) against its purchase price of $210,000. In so doing, they would have realized that the market value-in-use evidence on which they relied indicated a much lower true tax value for Hurricane's property.

### CONCLUSION

For the above stated reasons, the Indiana Board's final determination is REVERSED. The matter is REMANDED to the Indiana Board to instruct the local assessing officials to adjust the true tax value of Hurricane's improvement consistent with this opinion.

an accurate indicator of its market value-in-use, the Court will as well.