INDIANAPOLIS RACQUET CLUB,
INC., Petitioner,

v.

MARION COUNTY ASSESSOR,
Respondent.

No. 49T10–1201–TA–1.

Tax Court of Indiana.

Aug. 21, 2014.

Stephen E. DeVoe, Bose McKinney & Evans LLP, Indianapolis, IN, Attorney for Petitioner.

John C. Slatten, Marion County Assessor's Office, Indianapolis, IN, Attorney for Respondent.

FISHER, Senior Judge.

In this case, the Court must examine whether the Indiana Board of Tax Review erred when it found that the Indianapolis Racquet Club, Inc. failed to establish a *prima facie* case that its land assessments were excessive or that they were not uni-

form and equal. The Court finds that it did not.

## FACTS AND PROCEDURAL HISTORY

The Racquet Club owns and operates a commercial tennis club located in Washington Township, at 8249 Dean Road on the north side of Indianapolis. In 2002, the Racquet Club's facility, which consisted of indoor and outdoor tennis courts, locker rooms, and associated retail and administrative space, sat on three contiguous parcels of land: Parcel # 8048124, Parcel # 8049954, and Parcel # 8051129. For the March 1, 2002 assessment, these parcels were valued as follows:

*Parcel # 8048124:* 2.869 acres were designated as "primary" land and assigned a base rate of $8.00 per square foot; 1.501 acres were designated as "secondary" land and assigned a base rate of $5.60 per square foot; and .437 acres were designated as "usable undeveloped" land and assigned a base rate of $2.40 per square foot for a total assessed value of $1,412,000;

*Parcel # 8049954:* The entire .54 acre parcel was designated as "usable undeveloped" land and assigned a base rate of $2.40 per square foot for a total assessed value of $56,500;

*Parcel # 8051129:* The entire 2.76 acre parcel was designated as "primary" land and assigned a base rate of $8.00 per square foot; a negative influence factor of 75% was then applied for a total assessed value of $240,500.

(*See, e.g.,* Cert. Admin. R. # 1 at 3, 5–6, 83; Cert. Admin. R. # 2 at 3, 5, 111–12; Cert. Admin. R. # 3 at 3, 5, 110.)[1]

---

1. The Racquet Club filed three certified administrative records in this case. Each record relates to one of the three parcels. For ease of reference, the Court will refer to the administrative record for Parcel # 8048124 as "Cert. Admin. R. # 1"; Parcel # 8049954 as "Cert. Admin. R. # 2"; and Parcel # 8051129 as "Cert. Admin. R. # 3."

Believing these assessments to be too high, the Racquet Club filed three petitions for review with the Marion County Property Tax Assessment Board of Appeals. When it was not successful at that level, the Racquet Club filed three petitions for review with the Indiana Board. The Indiana Board consolidated the petitions and held an administrative hearing on June 15, 2011.

On November 30, 2011, the Indiana Board issued a final determination upholding all three assessments. In its final determination, the Indiana Board explained that the Racquet Club failed to establish a *prima facie* case that its parcels were over-valued.

On January 17, 2012, the Racquet Club initiated three original tax appeals. The Court consolidated the appeals and then heard oral argument on November 7, 2012. Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

■ The party seeking to overturn an Indiana Board final determination bears the burden to demonstrate that it is invalid. *Hubler Realty Co. v. Hendricks Cnty. Assessor*, 938 N.E.2d 311, 313 (Ind. Tax Ct.2010). Consequently, the Racquet Club must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial or reliable evidence. *See* IND.CODE § 33–26–6–6(e)(1), (5) (2014).

## LAW

■ In Indiana, real property is assessed on the basis of its market value-in-use: the value "of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property." 2002 REAL PROPERTY ASSESSMENT MANUAL (Manual) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 2. Assessing officials determine the market value-in-use of non-agricultural land by examining the sales data of similar properties in the area. *See generally* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002–VERSION A (Guidelines) (incorporated by reference at 50 I.A.C. 2.3–1–2), Bk. 1, Ch. 2. *See also* IND.CODE § 6–1.1–31–6(c) (2002) (amended 2004). More specifically, assessing officials develop land orders that establish a range of base rates to be applied to land in each of the townships throughout a county. *See generally* Guidelines, Bk. 1, Ch. 2. *See also* IND.CODE § 6–1.1–4–13.6 (2002) (amended 2008). Those base rates reflect the recent sales prices of land within a designated neighborhood[2] and if the land is commercial, what its use categorization is (*e.g.,* "primary," "secondary," or "usable undeveloped").[3] *See* Guidelines, Bk. 1, Ch. 2 at 85–86.

■ When assessing commercial land pursuant to a land order, it might be necessary for an assessing official to adjust the applicable base rate in order to arrive at a more accurate result. *See, e.g.,* Manu-

---

2. A neighborhood is a geographic area in which the properties exhibit similar characteristics. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002–VERSION A (Guidelines) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2), Bk. 2, Glossary at 14. In establishing neighborhoods for purposes of valuing commercial land, assessing officials are to consider: (1) zoning; (2) major roads and streets; (3) natural geographic features like

waterways or lakes; and (4) availability of certain modes of transportation. *See id.,* Bk. 1, Ch. 2 at 84.

3. Primary land is used for the primary building site; secondary land is used for purposes that are secondary to the primary use; usable undeveloped land is vacant and held for future development. *Id.* at 85.

al at 2; Guidelines, Bk. 1, Ch. 2 at 16 (explaining that the method by which base rates are determined "is of less importance than arriving at the correct value of the land as of the valuation date"). *See also Hurricane Food, Inc. v. White River Twp. Assessor*, 836 N.E.2d 1069, 1074 (Ind. Tax Ct.2005) (explaining that "assessing officials are permitted to make whatever adjustments are necessary to bring an assessment made under the Manual/Guidelines ... more in line with other probative evidence as to a property's [actual] market value-in-use" (citation omitted)). Consequently, an assessing official may apply an influence factor to an assessment to account for an increase or decrease in the land's value due to a unique or peculiar condition. *See* Guidelines, Bk. 1, Ch. 2 at 89–90, 93–96.

 A land assessment made in accordance with a land order is presumed to be accurate. *See* Manual at 5. Nonetheless, a taxpayer may rebut this presumption with other market-based evidence that indicates that the assessment does not accurately reflect the land's market value-in-use. *See id. See also Eckerling v. Wayne Twp. Assessor*, 841 N.E.2d 674, 677–78 (Ind. Tax Ct.2006) (explaining that in order to rebut the presumption, a taxpayer must present evidence demonstrating what his property's actual market value-in-use is). For example, the taxpayer may present sales information on comparable properties, appraisals, or any other information compiled in accordance with generally accepted appraisal principles. *Id.*

## ANALYSIS

On appeal, the Racquet Club argues that the Indiana Board's final determination must be reversed because it is not supported by the evidence nor is it in accordance with the law. (*See, e.g.*, Pet'r V. Pet. Judicial Review ¶ 7.) More specifical-

ly, the Racquet Club claims that the Indiana Board simply ignored the unrebutted evidence it offered during the administrative hearing that demonstrated (1) that each parcel's assessed value exceeded its market value-in-use and (2) what the proper assessed value of each parcel should be. (*See, e.g.*, Pet'r Br. at 8.)

During the Indiana Board hearing, the Racquet Club's entire evidentiary case was presented through the testimony of its attorney, who is also the Racquet Club's President. Through his testimony, the Racquet Club conceded that the base rates applied to its land were within the specified ranges under the applicable portion of the Washington Township (Marion County) Land Order. (*See, e.g.*, Cert. Admin. R. # 1 at 109, 114, 119.) (*See also* Pet'r Br. at 10.) Nonetheless, the Racquet Club argued that the application of those rates to its land was improper because its property differed significantly from the other commercial properties in its neighborhood and with which it had been grouped under the Land Order. (*See, e.g.,* Cert. Admin. R. # 1 at 119–22.) For instance, the Racquet Club explained that it is the sole tennis facility among high-priced, high-density retail properties, restaurants, banks, and gas stations that populate the 82nd/86th Street corridor. (*See* Cert. Admin. R. # 1 at 107, 109, 119–20.) Moreover, the Racquet Club's property—unlike the others in its designated neighborhood—does not have direct access to, or visibility of, 82nd/86th Street. (Cert. Admin. R. # 1 at 103–04, 120.) Finally, the Racquet Club's property is the only one in its neighborhood that is zoned "SU–3." (Cert. Admin. R. # 1 at 117, 120–21.) Consequently, the Racquet Club claimed that when the Assessor valued its land pursuant to the Land Order, he was relying on sales information for properties that were not comparable. (*See, e.g.*, Cert. Ad-

min. R. # 1 at 110, 112, 118–19.) (*See also* Pet'r Br. at 8, 10–11.)

The Racquet Club acknowledged that it bore the burden to present more relevant sales data, but asserted that it was nearly impossible to meet that burden because there were only three other tennis clubs in the greater Indianapolis area (one in Lawrence Township, one in Pike Township, and one in Hamilton County) and none of them had ever been sold. (*See* Cert. Admin. R. # 1 at 107–08, 111–12, 122.)[4] Consequently, the Racquet Club argued that the land assessments of the other three tennis clubs should be sufficient to demonstrate that its land assessments were incorrect. (*See* Cert. Admin. R. # 1 at 124–25.) (*See also* Pet'r Br. at 12–14; Oral Arg. Tr. at 26, 28–29.) To that end, the Racquet Club explained that while its primary land was assessed at $348,000 an acre under the Land Order (*i.e.*, $8.00 per square foot × 43,560 square feet), the primary land at the three other tennis

clubs was assessed between $55,000 and $150,000 an acre under their respective land orders.[5] (*See* Cert. Admin. R. # 1 at 125–27, 134–35.) The Racquet Club argued that not only did this evidence show that its land assessments were incorrect, but also that they violated the Indiana Constitution's "uniform and equal" requirement. (*See* Cert. Admin. R. # 1 at 6, 110, 124–27.)

In turn, the Racquet Club's attorney testified that the proper assessed value of Parcel # 8048124 should be no more than $218,800 an acre (for a total of $956,375), Parcel # 8049954 should be no more than $14,115, and Parcel # 8051129 should be no more than $161,050 (or $58,500 an acre). (*See* Cert. Admin. R. # 1 at 3, 5–6; Cert. Admin. R. # 2 at 3, 5; Cert. Admin. R. # 3 at 3, 5, 111.) (*See also* Pet'r Br. at 14, 22–25.) The Racquet Club arrived at these numbers by simply reallocating the amount of land under each use categorization and then applying influence factors.[6]

---

4. At oral argument, however, the Racquet Club suggested that Indiana Code § 6–1.1–15–17.2, the burden-shifting statute, might apply. (*See* Oral Arg. Tr. at 20–21.) *See also* IND.CODE § 6–1.1–15–17.2 (2014) (explaining that when an assessing official increases a property's assessment by more than 5% from one year to the next, the assessing official bears the initial burden of demonstrating that that increase is correct). Despite the Racquet Club's claims that its assessments "increased by more than 5%," (*see, e.g.*, Cert. Admin. R. # 1 at 105–06, 114; Oral Arg. Tr. at 7, 59), the administrative records in this case contain no evidence from which the Court can determine this (*e.g.*, property record cards or tax bills that indicate what the 2001 assessments were on these properties). Thus, the Court declines to apply Indiana Code § 6–1.1–15–17.2 here.

5. The Racquet Club did not submit copies of the land orders applicable to those three other properties or their record cards; instead, it asked the Indiana Board to take administrative notice of those documents as public records. (*See* Cert. Admin. R. # 1 at 134–35.)

When the Indiana Board hearing officer indicated this was not possible, the Racquet Club attempted to offer copies of the Pike Township land order and the Hamilton County property's record card into evidence. (*See* Cert. Admin. R. # 1 at 135–36.) The Assessor objected to admitting those documents, however, because the Racquet Club had not complied with 52 I.A.C. 2–7–1. (*See* Cert. Admin. R. # 1 at 137–38 (*citing* 52 IND. ADMIN. CODE 2–7–1(b)(1), (f) (2011) (see *http://www.in.gov/legislative/iac/*) (indicating that the documents were subject to exclusion because the Racquet Club did not provide them to the Assessor at least five business days before the hearing)).) The Racquet Club admitted that it had not complied with the applicable rule, and the Indiana Board sustained the Assessor's objection. (*See* Cert. Admin. R. # 1 at 138.)

6. For instance, the Racquet Club calculated the $956,375 figure on Parcel # 8048124 by redesignating 3.51 acres as primary land (with the $8.00 per square foot base rate), .36 acres as secondary land (with the $5.60 per square foot base rate), and .50 acres as usua-

(*See* Cert. Admin. R. # 1 at 79–80; Cert. Admin. R. # 2 at 5, 111–12; Cert. Admin. R. # 3 at 5, 110–11.) (*See also* Pet'r Br. at 14, 22–25.)

Based on this evidentiary presentation, the Indiana Board did not err when it determined that the Racquet Club did not establish a *prima facie* case that its land was over-valued or that its land assessments were not "uniform and equal." The Court arrives at this conclusion for the following three reasons.

■ First, simply looking to the land assessments of other properties *that were subject to different land orders* will not on its face demonstrate that the Racquet Club's land assessments are incorrect. As the Court previously explained, the base rates that are set forth in a land order are a reflection of the sales information for a specific neighborhood. That sales information reflects the impact of numerous factors in and around the particular locale. *See, e.g., supra* note 2. Thus, while the

land assessments of the three other tennis clubs might have been an appropriate starting point for the Racquet Club in its appeal preparation, they were just that—a starting point. Indeed, the Racquet Club needed to provide some sort of explanation or analysis as to what factors made the value of the *land* at those properties comparable to its own; likewise, if there were any distinguishing characteristics that would affect the land values, the Racquet Club needed to account for those by making adjustments. *See, e.g., Long v. Wayne Twp. Assessor*, 821 N.E.2d 466, 470 (Ind. Tax Ct.2005) (explaining that statements that properties "are similar" is not probative evidence; rather, specific reasons must be provided as to why one believes a property is similar), *review denied.* *See also* IND.CODE § 6–1.1–15–18(c)(2) (2012).[7] The Racquet Club did neither.

■ Second, as the Court has also previously explained, the proper way to account for a decrease in land's value due to a unique or peculiar condition is through

---

ble undeveloped (with the $2.40 per square foot base rate) and then applying a negative influence factor of 30%. (*See* Cert. Admin. R. # 1 at 79–80.) (*See* also Pet'r Br. at 14.) With respect to Parcel # 8049954, the Racquet Club did not consider it to be marketable because it was so small and although it fronted on 82nd Street, the Racquet Club never actually installed an access road to the street. (Cert. Admin. R. # 2 at 111.) Consequently, the Racquet Club simply asserted that the same negative influence factor of 75% that was applied to Parcel # 8051129 should also apply to this parcel. (Cert. Admin. R. # 2 at 5, 111–12.) (*But see* Cert. Admin. R. # 3 at 110–11 (indicating that the Racquet Club believed that the 75% negative influence factor applied to Parcel # 8051129 was to account for the fact that the improvements on that parcel—the outdoor clay tennis courts—were unusable in inclement weather).) Finally, the Racquet Club explained that with respect to Parcel # 8051129, it designated 1.46 acres as primary land and the remaining 1.30 acres as usable undeveloped land and then applied the negative influence factor of 75% from the

original assessment. (*See, e.g.,* Cert. Admin. R. # 3 at 5, 110–11.)

7. This statutory provision, enacted in 2012, states that a taxpayer may introduce evidence of the assessments of any relevant, comparable properties. *See* IND.CODE § 6–1.1–15–18(c)(2) (2012). Nonetheless, the provision also states that "preference shall be given to comparable properties that are located in the same taxing district or within two (2) miles of a boundary of the taxing district." *Id.* (accounting for the fact that such properties will presumably be subject to the same factors that impact value). Moreover, "[t]he determination of whether properties are comparable shall be made using generally accepted appraisal and assessment practices." *Id.* Not only are the three tennis clubs more than 2 miles from the Racquet Club's facility, but the Racquet Club provided no explanation as to how the land at those facilities compared with its land (*e.g.,* accessibility to main thoroughfares, zoning, use of the surrounding parcels, etc.).

the application of a negative influence factor. *See supra* pages 152–53. To establish entitlement to a "misimprovement" influence factor,[8] the Racquet Club not only needed to show that its parcels did not have the same use as surrounding parcels, *but how, through market-based evidence, that inconsistent use negatively impacted its land's value. See Kooshtard Prop. VIII, LLC v. Shelby Cnty. Assessor,* 987 N.E.2d 1178, 1181 (Ind. Tax Ct.2013), *review denied; Indianapolis Racquet Club, Inc. v. Washington Twp. Assessor,* 802 N.E.2d 1018, 1021 (Ind. Tax Ct.2004), *review denied.* Here, however, the Racquet Club never even attempted to quantify the impact of the inconsistent use on the value of its land. Rather, it appears that it arbitrarily picked a number "that felt right" and then adjusted the assessment computation to arrive at that number. This evidence does not begin to demonstrate how the difference in value the Racquet Club proposes is a direct result of its land being used differently than those surrounding it. *See, e.g., Fleet Supply, Inc. v. State Bd. of Tax Comm'rs,* 747 N.E.2d 645, 653 (Ind. Tax Ct.2001) (explaining that because a taxpayer failed to provide evidence linking its land's inconsistent use to an actual loss in value, it was not entitled to a negative influence factor), *review denied.*

■ Finally, the Racquet Club misunderstands what needs to be shown in order to prevail on a "uniform and equal" argument.[9] Specifically, the Racquet Club needed to demonstrate that its assessed values did not bear the same relationship to its market values as other properties within Washington Township. *See Thorsness v. Porter Cnty. Assessor,* 3 N.E.3d 49, 51, 54 (Ind. Tax Ct.2014). During the Indiana Board hearing, however, the Racquet Club asserted that its assessments were not uniform and equal simply because the land at the three other tennis clubs—none of which were even in the Racquet Club's township—was valued differently. This is not sufficient to demon-

---

8. Nine influence factors are applicable to commercial land that take into account the effects of its 1) topography, 2) under-improvement, 3) excess frontage, 4) shape or size, 5) misimprovement, 6) restrictions, 7) traffic flow, 8) view, and 9) corner influence. *See* Guidelines, Bk. 1, Ch. 2 at 89–90, 94–95. While the Racquet Club never explicitly stated which influence factor it was seeking, a misimprovement factor most appropriately reflects the argument it presented to the Indiana Board. (*Compare, e.g.,* Cert. Admin. R. # 1 at 6, 100–29 *with* Guidelines, Bk. 1, Ch. 2 at 94 (defining "misimprovement" as "[a] decrease indicating a lot that has been valued higher than its current use").

9. Article 10, Section 1 of the Indiana Constitution-known · as the Property Taxation Clause—directs the General Assembly to "provide, by law, for a uniform and equal rate of property assessment and taxation and . . . prescribe regulations to secure a just valuation for taxation of all property." IND. CONST. art. 10, § 1(a). *See also Fesler v. Bosson,* 189 Ind. 484, 128 N.E. 145, 147 (1920)

(explaining that the Property Taxation Clause establishes three basic and interlocking propositions: "(1) Uniformity and equality in assessment; (2) uniformity and equality as to rate of taxation; and (3) a just valuation for taxation"). The Indiana Supreme Court has explained that

[t]he first clause of [Article 10, Section 1] is certainly complied with when the same basis of assessment is fixed for all property, and the same rate of taxation is fixed within the district subject to taxation. . . . As to the latter clause . . . providing that the [G]eneral [A]ssembly "shall prescribe such regulations as shall secure a just valuation for taxation," it leaves it to the [L]egislature to prescribe the mode by which the valuation of all property shall be ascertained, enjoining upon them the one obligation to provide such regulations as shall secure a just valuation[.]

*Cleveland, C., C. & St. L. Ry. Co. v. Backus,* 133 Ind. 513, 33 N.E. 421, 428 (1893), *aff'd by* 154 U.S. 439, 14 S.Ct. 1122, 38 L.Ed. 1041 (1894).

strate a lack of uniformity and equality. *See id.* at 51–54. *See also Westfield Golf Practice Ctr., LLC v. Washington Twp. Assessor,* 859 N.E.2d 396, 398–99 (Ind. Tax Ct.2007).

## CONCLUSION

The final determination shows that the Indiana Board did not ignore the Racquet Club's evidence. Instead, it shows that the Indiana Board weighed that evidence and concluded that it was not probative in demonstrating that the Racquet Club's land was over-valued or that its land assessments were not uniform and equal with other properties. Because the Racquet Club did not make a *prima facie* case, the burden to rebut its evidence never shifted to the Assessor. *See Am. United Life Ins. Co. v. Maley,* 803 N.E.2d 276, 281 (Ind. Tax Ct.2004), *review denied.* Accordingly, the final determination of the Indiana Board is AFFIRMED.

Nevertheless, the Court notes that during the Indiana Board hearing the Racquet Club claimed that the property record card for Parcel # 8048124 overstated the parcel's dimensions by 19,063 square feet. (*See* Cert. Admin. R. # 1 at 5, 117 (explaining that the record card correctly indicated that the parcel was 4.371 acres, but calculated a value for a total of 209,463 square feet).) The Indiana Board erred in denying relief as to this claim because there is a copy of this parcel's record card in the administrative record that displays this error. (*Compare* Cert. Admin. R. # 1 at 28 ¶ 19(*l*) *with* 83.) Accordingly, the Court REMANDS this issue to the Indiana Board so that it can instruct the Assessor to correct the record card so that the parcel's square footage and acreage are consistent.