PETITIONERS APPEARING PRO SE:
**LEE and SALLY PETERS**
Carmel, IN

ATTORNEY FOR RESPONDENTS:
**DAVID F. TRUITT**
Attorney at Law
Lebanon, IN

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| LEE and SALLY PETERS, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | )     Cause No. 49T10-1207-TA-42 |
| | ) |
| LISA GAROFFOLO, BOONE COUNTY | ) |
| ASSESSOR, and the INDIANA BOARD | ) |
| OF TAX REVIEW, | ) |
| | ) |
| Respondents. | ) |

**FILED**
*Kevin S. Smith*
**CLERK**
of the supreme court,
court of appeals and
tax court

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**May 14, 2015**

FISHER, Senior Judge

This case examines whether the Indiana Board of Tax Review erred in upholding the 2010 real property assessment of Lee and Sally Peters (the Petitioners). Upon review, the Court finds that the Indiana Board did not err.

## FACTS AND PROCEDURAL HISTORY

The Petitioners own real property on Main Street in Zionsville, Indiana. The property consists of a 2,852 square foot office building situated on a 0.16 acre lot. (See Cert. Admin. R. at 65-66.)

For the 2009 tax year, the Petitioners' property was assessed at $306,400. (See Cert. Admin. R. at 63.) For the 2010 tax year, however, the assessment increased to $430,900. (See Cert. Admin. R. at 63.)

By letter dated January 18, 2010, the Petitioners challenged their 2010 assessment with the Boone County Property Tax Assessment Board of Appeals (PTABOA). (See Cert. Admin. R. at 6.) The PTABOA reduced the assessment to $420,000. (See Cert. Admin. R. at 73-75.) The Petitioners then filed an appeal with the Indiana Board.

The Indiana Board conducted an administrative hearing in the matter on March 14, 2012. On June 8, 2012, the Indiana Board issued a final determination in which it found that the Petitioners failed to meet their burden of proving that the 2010 assessment was incorrect. (See Cert. Admin. R. at 19 ¶¶ 17(j), 18.) Consequently, the Indiana Board upheld the $420,000 assessment.

The Petitioners filed an original tax appeal on July 23, 2012. The Court heard oral arguments on June 27, 2013. Additional facts will be supplied as necessary.

**LAW**

Under Indiana's assessment system, real property is assessed on the basis of its "market value-in-use." 2002 REAL PROPERTY ASSESSMENT MANUAL (Manual) (incorporated by reference at 50 IND. ADMIN. CODE 2.3-1-2 (2002 Supp.)) at 2. As this Court has previously explained, a property's market value-in-use is, in most instances, equivalent to its fair market value. See, e.g., Millennium Real Estate Inv., LLC v. Benton Cnty. Assessor, 979 N.E.2d 192, 196 (Ind. Tax Ct. 2012), review denied. Nonetheless, "[i]n markets in which sales are not representative of utilities, either

2

because the utility derived is higher than indicated sale prices, or in markets where owners are motivated by non-market factors such as the maintenance of a farming lifestyle even in the face of a higher use value for some other purpose, [market value-in-use] will not equal value in exchange." Manual at 2.

Three generally accepted appraisal techniques may be used to calculate a property's market value-in-use. See id. at 3. Specifically:

> [t]he first approach, known as the cost approach, estimates the value of the land as if vacant and then adds the depreciated cost new of the improvements to arrive at a total estimate of value. The second approach, known as the sales comparison approach, estimates the total value of the property directly by comparing it to similar, or comparable, properties that have sold in the market. The third approach, known as the income approach, is used for income producing properties that are typically rented. It converts an estimate of income, or rent, the property is expected to produce into value through a mathematical process known as capitalization.

Id. (emphases omitted). Indiana recognizes, however, that because "assessing officials are faced with the responsibility of valuing all properties within their jurisdictions . . . [they] often times do not have the data or time to apply all three approaches to each property." Id. Accordingly, the primary method for Indiana assessing officials to determine a property's market value-in-use is the cost approach. See id. To that end, Indiana has promulgated a series of guidelines that explain in detail how property is to be valued under this approach. See REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002 – VERSION A (Guidelines), Bks. 1 and 2. Under these guidelines, an assessor determines the market value-in-use of non-agricultural land by applying the previously determined base rates that are set forth in the township/county's land order.[1] See generally Guidelines, Bk. 1, Ch. 2. See also IND. CODE § 6-1.1-4-13.6 (2009) (amended

---

[1] The base rates reflect the recent sales prices of similar land. See REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002 – VERSION A (Guidelines), Bk. 1, Ch. 2.

3

2010). The guidelines also provide the cost tables for the assessor to use when valuing improvements. Guidelines, Bk. 2, Ch. 6, Apps. D-G.

When an assessor assesses land and improvements pursuant to the guidelines, her assessment is presumed accurate. Manual at 5. See also Indianapolis Racquet Club, Inc. v. Marion Cnty. Assessor, 15 N.E.3d 150, 153 (Ind. Tax Ct. 2014). That presumption may be rebutted, however, with other market-based evidence (e.g., sales data, appraisals, or other information compiled in accordance with generally accepted appraisal principles) that indicates that the assessment is not an accurate reflection of the property's market value-in-use. See Manual at 5.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Accordingly, the Petitioners must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1), (5) (2015).

## DISCUSSION

The Petitioners present two issues on appeal. First, they claim that the Indiana Board erred in determining that they, and not the Assessor, bore the burden of proof at the administrative hearing. (See, e.g., Pet'rs' Br. at 1 ¶¶ 1-2.) Second, they claim that the Indiana Board erred in determining that the evidence before it did not establish that their property was overvalued. (See, e.g., Pet'rs' Br. at 1 ¶¶ 3-6.)

4

I.

Indiana Code § 6-1.1-15-17.2 contains what is commonly referred to as "the burden-shifting rule." See Orange Cnty. Assessor v. Stout, 996 N.E.2d 871, 873 (Ind. Tax Ct. 2013). The statute provides that if the assessment of the same property increases by more than 5% from one year to the next, the assessor bears the burden of proving that the assessment is correct. IND. CODE § 6-1.1-15-17.2 (2012) (amended 2014). Compare with e.g., IND. CODE § 6-1.1-15-1(m) (2012) (indicating that otherwise, the taxpayer bears the burden of demonstrating that the assessment is incorrect).

There is no question in this case that the Petitioners' assessment increased by more than 5% from 2009 to 2010. Accordingly, under the plain terms of Indiana Code § 6-1.1-15-17.2, the Assessor bore the burden of proving at the Indiana Board hearing that the assessment increase was proper. See Indiana Dep't of State Revenue v. Horizon Bancorp, 644 N.E.2d 870, 872 (Ind. 1994) (stating that an unambiguous statute must be read to "mean what it plainly expresses, and its plain and obvious meaning may not be enlarged or restricted" (citations omitted)). The Indiana Board's conclusion that the Petitioners bore the burden of proof at its hearing is therefore erroneous.[2]

---

[2] The Indiana Board held that the Petitioners bore the burden of proof because the property the Assessor assessed in 2010 was not the same property she assessed in 2009. (See Cert. Admin. R. at 16 ¶ 16.) This holding not only ignores the fact that the Petitioners have always owned the same 0.16 acres of land but that the Assessor never created a new parcel identification number when she incorporated the "new" property into their assessment. (See Cert. Admin. R. at 65; Oral Arg. Tr. at 28.) Moreover, the Indiana Board's holding creates an inconsistent or absurd result when examined against another burden shifting statute. See, e.g., DeKalb Cnty. E. Cmty. Sch. Dist. v. Dep't of Local Gov't Fin., 930 N.E.2d 1257, 1260 (Ind. Tax Ct. 2010) (explaining that when determining what the legislature intended in enacting a statute, the Court will read the statute logically so as to prevent unjust or absurd results); Lake Cnty. Assessor v. Amoco Sulfur Recovery Corp., 930 N.E.2d 1248, 1254-55 (Ind. Tax Ct. 2010) (explaining that the Court will attempt to harmonize statutes that are in pari materia), review denied. Indeed, under that other statute, when an assessor changes the underlying characteristics of a property, she bears the burden of proving that the resulting assessment is valid. See, e.g., IND. CODE § 6-1.1-4-4.4 (2012).

Nonetheless, as will be discussed in the next section of this opinion, the Indiana Board's error does not necessitate a reversal of its final determination.

II.

The Petitioners also argue on appeal that the Indiana Board erred when it determined that the evidence before it did not establish that their property was overvalued in 2010. To determine whether this argument has merit, the Court will examine the administrative record in its entirety to determine whether a reasonable person could find enough relevant evidence to support the Indiana Board's decision. See, e.g., Dawkins v. State Bd. of Tax Comm'rs, 659 N.E.2d 706, 709 (Ind. Tax Ct. 1995) (explaining that an Indiana Board final determination is arbitrary or capricious "when it is without some basis which would lead a reasonable person to the same conclusion" (citation omitted)); Kildsig v. Warren Cnty. Assessor, 998 N.E.2d 764, 767 (Ind. Tax Ct. 2013) (explaining that an Indiana Board final determination is unsupported by substantial or reliable evidence when a reasonable person cannot find enough relevant evidence in the administrative record to support the decision).

The administrative record in this case reveals that during the Indiana Board hearing, the Assessor explained that the 2010 increase in the Petitioners' assessment was attributable solely to the fact that in 2009, she assessed only half of their land. (See, e.g., Cert. Admin. R. at 7, 65, 80, 111, 116-17.) To correct her mistake, the Assessor simply added the unassessed .08 acre of land to the Petitioners' property record card and then, using the base rate that had been applied in the original assessment, doubled the land's value. (See Cert. Admin. R. at 65, 80 (indicating that that base rate had been applied at least as far back as 2007).) As additional support for

6

her assessment, the Assessor submitted a spreadsheet with the sales data for four purportedly comparable commercial properties that sold in Zionsville Village in 2008 and 2009.[3] (See Cert. Admin. R. at 68, 109.) The Assessor explained that while the Petitioners' property was assessed at only $151.08 per square foot, the data from these four sales indicated that comparable properties had been sold at a much higher average of $225.41 per square foot. (See Cert. Admin. R. at 65-66, 68, 110.)[4]

In their presentation to the Indiana Board, the Petitioners admitted that they owned the previously unassessed land in question. (See Cert. Admin. R. at 48-49, 93.) Still, they asserted that accounting for the additional .08 acres of land in their assessment should not have affected their property's overall value because in Zionsville, the size of a lot is irrelevant to value of the overall property. (See, e.g., Cert. Admin. R. at 93-95, 115.) The Petitioners also claimed that the best use of their land was to bulldoze the improvement because it had no value, as it was not ADA-compliant and its heating system was "soon to go belly up[.]" (See, e.g., Cert. Admin. R. at 93-95.) Finally, they argued that "when you take the value of the land and add a hypothetical value of the building . . . that's not [a measure of the] market" because

---

[3] Actually, the Assessor provided the sales data on 17 commercial property sales in Zionsville Village between 2005 and 2010. (See Cert. Admin. R. at 68.) The Assessor pointed out, however, that of those 17 sales, only the four in 2008 and 2009 were relevant to the Petitioners' 2010 assessment. (See Cert. Admin. R. at 68, 109-10.) See also 50 IND. ADMIN. CODE 21-3-3 (2010) (see http://www.in.gov/legislative.iac/) (indicating that "[f]or assessment years occurring March 1, 2007, and thereafter, the local assessing official shall use sales of properties occurring the two (2) calendar years preceding the relevant assessment date") (repealed eff. April 8, 2010).

[4] The Assessor also presented information regarding 2004 and 2005 vacant land sales and standard lot sizes in Zionsville Village. (See Cert. Admin. R. at 67.) The Court need not consider this evidence on appeal, however, because (1) the Assessor previously indicated that sales data prior to 2008 was irrelevant to the Petitioners' assessment; (2) the Assessor never relied on, or even discussed, this information in her evidentiary presentation; and (3) the Indiana Board never relied on this information in making its final determination. See supra note 3. (See also Cert. Admin. R. at 10-20, 82-120.)

when valuing property, the Assessor should value land or improvements, not both. (See, e.g., Cert. Admin. R. at 93-95, 115.)

As evidentiary support for their argument, the Petitioners presented a spreadsheet with the sales data for 12 purportedly comparable commercial properties that sold in Zionsville Village between 2009 and 2011. (See Cert. Admin. R. at 54.) For nine of those sales, they simply used the sales data from the Assessor's spreadsheet, but made certain adjustments to that data to account for "mistakes" they believe she made. (Compare Cert. Admin. R. at 54, 68 with 96-99.) The Petitioners added their own data for the three other sales of commercial properties that occurred in Zionsville Village in 2010 and 2011. (See Cert. Admin. R. at 54, 100-02.) The Petitioners then explained that in both re-calculating and using a non-linear logarithmic curve fit to graph the "average" and the "average of the averages" of those 12 sales, they arrived at a per square foot value of $125. (Cert. Admin. R. at 55-56, 102-03.) (See also Cert. Admin. R. at 113-14 (arguing that the Assessor did not understand how to calculate "an average" and that "weighted averages" should be used).) The Petitioners subsequently refined their list of comparable sales down to five to account for building size, and again, in calculating and using a non-linear logarithmic curve fit to graph the "average" and the "average of the averages" of those 5 sales, they arrived at a per square foot value of $128. (Cert. Admin. R. at 56, 103.) Finally, they "did the same drill" with the corrected data from all 17 of the Assessor's sales and arrived at a per square foot value of $135. (See Cert. Admin. R. at 57-58, 104.) Based on these per square foot values, the Petitioners claimed that their property's assessment should be between $360,000 and

$405,000. (See Cert. Admin. R. at 103-04.)[5]

Given these evidentiary presentations, the Court cannot say the Indiana Board erred when it determined that the evidence before it did not establish that the subject property was overvalued for 2010. The Assessor's explanation as to why and how she increased the assessment was, at first blush, sufficient to demonstrate that the increase in the assessment was proper. See Manual at 5; Indianapolis Racquet Club, 15 N.E.3d at 153 (providing that when an assessor makes an assessment using the guidelines, that assessment is presumed accurate); Damon Corp. v. Indiana State Bd. of Tax Comm'rs, 738 N.E.2d 1102, 1106 (Ind. Tax Ct. 2000) (explaining that in order to prevail, the party that bears the burden of proof in a property tax appeal must present a prima facie case, which is a case in which the evidence is "'sufficient to establish a given fact and which if not contradicted will remain sufficient'" (emphasis added and citation omitted)). As a result, the burden of production (i.e., the burden to go forward with the

---

[5] During the Indiana Board hearing, the Petitioners also presented a document that valued their property with the following income approach: "$21,756.99 Income capped at .08 yields $271,956[;] at .06 yields $362,617." (See Cert. Admin. R. at 50.) (See also Cert. Admin. R. at 100-01 (explaining that in calculating their income figure, the Petitioners deducted property taxes and mortgage payments as expenses).) The Indiana Board rejected this income approach because it did not comport with generally accepted appraisal principles. (See generally Cert. Admin. R. at 17-18 ¶¶ 17(d)-(f).) During oral argument, however, the Petitioners complained that the Indiana Board spent too much time in its final determination discrediting their income approach because they never intended that it be used as evidence of value in the first place. (See Oral Arg. Tr. at 8.)

evidence) shifted from the Assessor to the Petitioners.[6]

As previously indicated, the Petitioners relied primarily on the Assessor's sales data in making their evidentiary presentation. Nonetheless, the administrative record reveals that neither the Assessor, in offering that evidence, nor the Petitioners, in using that evidence, provided the Indiana Board with any explanation as to how the properties from which that data was culled were comparable to the subject property and how any differences between the properties affected their market values-in-use. (See Cert. Admin. R. at 54-58, 68, 82-120.) This data, therefore, supported neither the Assessor's assessment nor the Petitioners' claim. See, e.g., Long v. Wayne Twp. Assessor, 821 N.E.2d 466, 471 (Ind. Tax Ct. 2005) (explaining that to establish comparability, the proponent of the evidence must explain to the Indiana Board the characteristics of the subject property, how those characteristics relate to those of the purportedly comparable properties, and how any differences between the properties affect their market values-in-use), review denied. The evidence submitted by the Petitioners with respect to the three other sales also suffer from the same infirmity. (See Cert. Admin. R. at 54-58, 82-120.) Consequently, the Petitioners failed to shift the burden of production back on the Assessor and the Assessor's prima facie case therefore stands.

---

[6] The term "burden of proof" incorporates both the burden of persuasion and the burden of production. See Porter Mem'l Hosp. v. Malak, 484 N.E.2d 54, 58 (Ind. Ct. App. 1985), trans. denied. The burden of persuasion is "[a] party's duty to convince the fact-finder to view the facts in a way that favors that party." BLACK'S LAW DICTIONARY 223 (9th ed. 2009). The burden of production, however, is "[a] party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against [it] in a peremptory ruling[.]" Id. While the burden of persuasion never shifts, the burden of production may shift between parties during the course of litigation. See, e.g., Peabody Coal Co. v. Ralston, 578 N.E.2d 751, 753-54 (Ind. Ct. App. 1991).

## CONCLUSION

For the foregoing reasons, the Indiana Board's final determination is AFFIRMED.