ORANGE COUNTY ASSESSOR,
Petitioner,

v.

James E. STOUT, Respondent.

No. 49T10–1112–TA–94.

Tax Court of Indiana.

Oct. 2, 2013.

Marilyn S. Meighen, Attorney At Law, Carmel, IN, Attorney for Petitioner.

James E. Stout, West Baden Springs, IN, Respondent Appearing Pro Se.

WENTWORTH, J.

The Orange County Assessor claims that the Indiana Board of Tax Review's final determination regarding James E. Stout's 2009 real property assessment is not in accordance with the law because the Indiana Board applied Indiana Code § 6-1.1-15-17, a burden-shifting statute, improperly. In the alternative, the Assessor argues that the Indiana Board's final determination is not supported by the evidence. The Court, however, affirms the Indiana Board's decision.

## FACTS AND PROCEDURAL HISTORY

Stout owns 9.12 acres of land in West Baden Springs, Indiana. For the 2008 tax year, his land was assessed at $8,000. For the 2009 tax year, however, his land's assessed value increased to $45,600 because the Assessor reclassified 8.12 acres of "agricultural" land to "residential excess" land.[1]

On May 18, 2010, Stout filed an appeal with the Orange County Property Tax Assessment Board of Appeals (PTABOA). The PTABOA held a hearing on July 27, 2010. When, after 120 days the PTABOA still had not issued a decision on his appeal, Stout sought relief from the Indiana Board.

The Indiana Board conducted a hearing on Stout's appeal on July 7, 2011. During that hearing, Stout argued that because his assessment increased by more than 5% from 2008 to 2009, Indiana Code § 6-1.1-15-17 required the Assessor to prove that the assessment was correct.[2] The Assessor asserted, on the other hand, that because Indiana Code § 6-1.1-15-17 was first effective July 1, 2011, it applied only to assessment appeals involving the March 1, 2012, assessments and forward. The Assessor explained that because Stout was appealing his 2009 assessment, Indiana Code § 6-1.1-15-17 did not apply, and Stout therefore bore the burden of proving that his assessment was incorrect.

On November 7, 2011, the Indiana Board issued a final determination finding that the Assessor bore the burden of proving that Stout's land assessment was proper. The Indiana Board then concluded that the Assessor failed to meet that burden. (See Cert. Admin. R. at 17–18 ¶ 14(g)–(h).)

The Assessor initiated this original tax appeal on December 19, 2011. The Court heard oral argument on April 13, 2012. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. *Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind.

---

1. The remaining acre of Stout's land was classified as "residential homesite" land. That classification, the assessed values assigned to Stout's residence, and the assessed values assigned to the two small utility buildings on the property are not at issue in this case.

2. In the alternative, Stout asserted that his land's agricultural classification was proper because: 1) the tree canopy cover on seven acres was 100%; 2) he purchased another 1,000 trees for replanting on the eighth acre; and 3) similarly wooded neighboring properties were classified as agricultural. (Cert. Admin. R. at 3, 51–53, 139–42.)

Tax Ct.2003). Accordingly, the Assessor must demonstrate to the Court that the Indiana Board's final determination in this matter is not in accordance with law or that it is unsupported by substantial evidence. *See* Ind.Code § 33–26–6–6(e)(1), (5) (2013).

## LAW

■ Prior to 2009, a taxpayer who challenged his property tax assessment bore the burden of proof (*i.e.*, the burden of persuading the fact-finder that the assessment was incorrect and the initial burden of producing evidence to demonstrate that the assessment was incorrect).[3] *See, e.g.*, Ind.Code § 6–1.1–15–1(m)(2) (2008) (indicating that a taxpayer that initiates a property tax appeal must "prosecute" the review) (footnote added). *See also* 2002 Real Property Assessment Manual (incorporated by reference at 50 Ind. Admin. Code 2.3–1–2 (2002 Supp.)) at 5 (explaining that an assessment made pursuant to its guidelines is presumed accurate unless the taxpayer demonstrates otherwise). In 2009, however, the General Assembly established an exception to that rule by adding subsection (p) to Indiana Code § 6–1.1–15–1:

> This subsection applies if the assessment for which a notice of review is filed increased the assessed value of the assessed property by more than five percent (5%) over the assessed value finally

determined for the immediately preceding assessment date[,] [t]he county assessor or township assessor making the assessment has the burden of proving that the assessment is correct.

Ind.Code § 6–1.1–15–1(p) (eff. July 1, 2009) (repealed 2011). Then, in July of 2011, the General Assembly repealed Indiana Code § 6–1.1–15–1(p), while enacting a similar provision, Indiana Code § 6–1.1–15–17, the same day. *See* Pub.L. No. 172–2011 §§ 30, 32 (eff. July 1, 2011); Ind. Code § 6–1.1–15–17 (2011) (repealed 2012). Indiana Code § 6–1.1–15–17 stated:

> This section applies to any review or appeal of an assessment under this chapter if the assessment that is the subject of the review or appeal increased the assessed value of the assessed property by more than five percent (5%) over the assessed value determined by the county assessor or township assessor (if any) for the immediately preceding assessment date for the same property. The county assessor or township assessor making the assessment has the burden of proving that the assessment is correct in any review or appeal under this chapter and in any appeals taken to the Indiana board of tax review or to the Indiana tax court.

I.C. § 6–1.1–15–17.[4] These statutes contain what is commonly referred to as "the burden-shifting rule."

---

**3.** The term "burden of proof" incorporates both the burden of persuasion and the burden of production. *See Porter Mem'l Hosp. v. Malak*, 484 N.E.2d 54, 58 (Ind.Ct.App.1985), *trans. denied.* The burden of persuasion is "[a] party's duty to convince the fact-finder to view the facts in a way that favors that party." Black's Law Dictionary 223 (9th ed. 2009). The burden of production, however, is "[a] party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against [it] in a peremptory ruling[.]" *Id.* While the burden of production may shift between parties dur-

ing the course of litigation, the burden of persuasion does not. *See, e.g., Peabody Coal Co. v. Ralston*, 578 N.E.2d 751, 753–54 (Ind. Ct.App.1991).

**4.** On February 22, 2012, the General Assembly repealed Indiana Code § 6–1.1–15–17 and enacted Indiana Code § 6–1.1–15–17.2, which contains the identical language provided in Indiana Code § 6–1.1–15–17. *Compare* Ind. Code § 6–1.1–15–17 (2011) (repealed 2012) *with* Ind.Code § 6–1.1–15–17.2 (2012).

## ANALYSIS

### I.

■ On appeal, the Assessor first claims that the Indiana Board's final determination is not in accordance with the law because it "incorrectly applies the *new* burden of proof statute, Ind[iana] Code § 6–1.1–15–17[.]" (Pet'r Br. at 1 (emphasis added).) More specifically, the Assessor argues that in applying Indiana Code § 6–1.1–15–17 to Stout's 2009 assessment appeal, which was already pending before the statute's effective date of July 1, 2011, the Indiana Board applied the new statute retroactively, in contravention of Indiana case law.[5] (*See* Pet'r Br. at 7–8 (footnote added).) The Assessor's argument fails, however, for the following interrelated reasons.

■ First, contrary to the Assessor's argument, Indiana Code § 6–1.1–15–17 is not a "new" statute, as its content had already been codified at Indiana Code § 6–1.1–15–1(p). *See supra* at p. 4; *Lake Cnty. Assessor v. Amoco Sulfur Recovery Corp.*, 930 N.E.2d 1248, 1254–55 (Ind. Tax Ct.2010) (stating that "[s]tatutes related to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious result") (citation omitted), *review denied.* The General Assembly repealed Indiana Code § 6–1.1–15–1(p) and enacted § 6–1.1–15–17 to clarify its original intent in enacting Indiana Code § 6–1.1–15–1(p): that the 5% burden-shifting rule was to be applied not solely at the preliminary level of the administrative process (*i.e.,* the PTABOA level), but throughout the entire appeals process. This clarification makes particular sense considering the overall structure of the property tax appeal process: PTABOA hearings are informal, non-record proceedings; whereas, hearings before the Indiana Board are more formalistic proceedings where a record is created for subsequent review. Accordingly, in originally enacting Indiana Code § 6–1.1–15–1(p), the General Assembly could not have intended the illogical result of shifting the burden of proof to the Assessor in the preliminary stages of an appeal only to shift it back to the taxpayer thereafter. *See Uniden Am. Corp. v. Indiana Dep't of State Revenue*, 718 N.E.2d 821, 828 (Ind. Tax Ct.1999) (explaining that statutes must be read in such a way that prevents an illogical or absurd result). *See also Indiana Dep't of State Revenue v. Kitchin Hospitality, LLC*, 907 N.E.2d 997, 1002 (Ind.2009) (stating that "[w]here it appears that the Legislature amends a statute to express its original intention more clearly, the normal presumption that an amendment changes a statute's meaning does not apply") (citation omitted). Thus, *as early as 2009*, the General Assembly deemed an annual increase in the assessed value of property in excess of 5% to automatically shift the burden of proof from the taxpayer (to demonstrate that the assessment was incorrect) to the assessing official (to demonstrate that the assessment was correct). *See Johnson Cnty. Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue*, 568 N.E.2d 578, 580–81 (Ind. Tax Ct.1991) (explaining that in construing a statute, a court's primary goal is to determine and implement the legislature's intent in enacting the statute and the actual language of the statute itself is the best evidence of that intent), *aff'd by* 585 N.E.2d 1336 (Ind. 1992).

---

5. Statutes are to be given prospective effect only, unless the Legislature has unambiguously and unequivocally intended retroactive effect as well. *Indiana Dep't of State Revenue, Inheritance Tax Div. v. Estate of Riggs,* 735 N.E.2d 340, 344 (Ind. Tax Ct.2000).

Second, the Assessor's argument fails because it is premised on the belief that the statutory "trigger" for shifting the burden of proof from the taxpayer to an assessing official is the assessment date. In other words, the Assessor believes that for Indiana Code § 6–1.1–15–17 to apply, the assessment—as well as the subsequent appeal thereon—must have occurred after the statute's effective date. (*See, e.g.,* Oral Arg. Tr. at 20–22.) Neither the plain language of Indiana Code § 6–1.1–15–17, nor the plain language of its predecessor, Indiana Code § 6–1.1–15–1(p), supports this interpretation. Both statutes similarly indicate that the burden of proof shifts from the taxpayer to an assessing official *when* a taxpayer files an appeal on an assessment that increased by more than 5% from one year to the next. *See supra* at p. 4. This shift in the burden of proof applies to the process and procedure of appeals alone, not to the mechanics of valuing property as of a certain assessment date. Accordingly, the statutes apply to all pending appeals regardless of assessment dates. Moreover, it would be impractical to find that the statute's trigger is the assessment date because an assessment that increases by more than 5% from one year to the next matters little if the taxpayer chooses not to challenge the increase. *See City of Carmel v. Steele,* 865 N.E.2d 612, 618 (Ind.2007) (stating that courts will not presume that the Legislature intended statutory language to be applied illogically or in a way that would bring about an absurd result).

Between 2008 and 2009, the Assessor increased Stout's land assessment by more than 5%. When Stout appealed that assessment to the PTABOA on May 18, 2010, Indiana Code § 6–1.1–15–1(p) was in effect, placing the burden of proof on the Assessor to establish the propriety of the assessment increase. Consequently, the Indiana Board's final determination that the Assessor bore the burden of proof in this case is in accordance with the law.

## II.

■ As an alternative argument, the Assessor contends that the Indiana Board's final determination is not supported by the evidence because she clearly met her burden of proof in this case: she provided a reasonable basis for reclassifying Stout's land. (*See* Pet'r Br. at 3.) This alternative argument also fails.

Land is classified and assessed as agricultural land when it is devoted to an agricultural use. IND.CODE § 6–1.1–4–13(a) (2009) (amended 2012). Devoting land to an agricultural use involves, among other things, the cultivation of income-producing crops. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (2004 Reprint) (incorporated by reference at 50 I.A.C. 2.3–1–2), Bk. 1, Ch. 2 at 99 (explaining that in valuing agricultural land, assessing officials typically use the income approach to determine "the residual or net income that will accrue to the land from [the] agricultural production"). One type of agricultural classification is "woodland," which is defined as

land supporting trees capable of producing timber or other wood products. This land has 50% or more canopy cover or is a permanently planted reforested area. This land use type includes land accepted and certified by the Indiana Department of Natural Resources as forest plantation under guidelines established to minimize soil erosion.[6]

*Id.* at 102, 104 (footnote added).

During the Indiana Board hearing, the Assessor submitted an aerial map that not

---

6. In contrast, land designated as "residential excess" is land "dedicated to a non-agricul-

only demonstrated that the tree canopy covered more than 50% of Stout's property, but also that Stout's tree canopy was similar to the neighboring properties. (*See* Cert. Admin. R. at 63, 149–52.) When asked to clarify why some of those neighboring properties were classified as "agricultural" while others were classified as "residential excess," the Assessor stated:

> What the County has attempted to do ... is any property that is ... classified as ag, it ... would need to be either actively farmed or in the case of wooded, it would need to be harvestable timber[.] ... The State has asked, recommended [to] the counties if it is wooded ground that the [property owner] provide a forest management plan and/or a timber harvesting plan for it to qualify as agricultural property. And what the County is doing ... [is] reviewing all parcels that have been classified as agricultural to see if they actually would [meet] the State's mandate or the DLGF's mandate for agricultural property.

(Cert. Admin. R. at 152–53.) In other words, the Assessor explained that she changed the classification on Stout's land from "agricultural" to "residential excess" solely on the basis that she did not have a forest management plan or a timber har-

vesting plan for the property.[7] (*See* Cert. Admin. R. at 152–53 (footnote added).)

■ A final determination is not supported by the evidence if, upon reviewing the record in its entirety, a reasonable person cannot find enough relevant evidence to support the determination. *See Amax, Inc. v. State Bd. of Tax Comm'rs,* 552 N.E.2d 850, 852 (Ind. Tax Ct.1990). Here, a reasonable mind would not accept the lack of a forest management plan or a timber harvesting plan alone as adequate support for the conclusion that Stout's property was not being used for agricultural purposes. For example, the Department of Natural Resources only prescribes forest management plans for parcels that are a *minimum of ten contiguous acres. See* Ind.Code §§ 6–1.1–6–5, –16(b) (2009). The land at issue, however, is only 8.12 acres.

Moreover, the fact that the Assessor did not have in her possession a timber harvesting plan for the property does not mean that one does not exist. (*See generally* Cert. Admin. R. (failing to indicate that the Assessor actually requested or provided Stout with an opportunity to present such a plan at the time she began her investigation).) Similarly, the lack of a timber harvesting plan does not mean that Stout has not harvested, or is harvesting, timber from the property.[8] Because the

---

tural use normally associated with the homesite. Areas containing a large manicured yard over and above the accepted one acre homesite would qualify for the [residential] excess" classification. *See, e.g.,* Real Property Assessment Guidelines For 2002—Version A (2004 Reprint) (Guidelines) (incorporated by reference at 50 Ind. Admin. Code 2.3–1–2), Bk. 1, Ch. 2 at 105–06.

7. In any event, the Assessor claimed that her overall *assessment of the property* for $108,400 was supported by the fact that when Stout listed the property for sale in September of 2009—improvements and all—he was asking $127,000. (Cert. Admin. R. at 148–49.) The Indiana Board rejected this argu-

ment on three grounds: 1) the Assessor failed to provide any evidence relating the September 2009 ask price to the January 2008 valuation date; 2) Stout testified *without contradiction* that his ask price included personal property; and 3) Stout testified without contradiction that he never got any offers at that price. (Cert. Admin. R. at 17 ¶ 14(d).) The Assessor does not challenge the Indiana Board's ruling on this claim.

8. In essence, the Assessor complains that the Indiana Board required her—impossibly—to prove a negative (*i.e.,* that Stout was not using his property for an agricultural purpose). (Oral Arg. Tr. at 19–20; Pet'r Br. at 15–16.) The Assessor's complaint ignores the fact that

Assessor failed to provide any evidence that demonstrated that Stout was not using his 8.12 acre property for an agricultural purpose, the Court cannot say that the Indiana Board's final determination is not supported by substantial evidence.

**CONCLUSION**

For the above-stated reasons, the final determination of the Indiana Board is AFFIRMED.

---

while she was conducting her investigation, she could have asked Stout for evidence of a farm number as assigned by the United States Department of Agriculture, crop sales, or tax returns reporting farm income.