ATTORNEYS FOR PETITIONERS
and FOR AMICI CURIAE INDIANA
RETAIL COUNCIL, INC. and
INDIANA APARTMENT
ASSOCIATION, INC.:[1]
**MELISSA G. MICHIE**
**BRENT A. AUBERRY**
**BENJAMIN A. BLAIR**
**ABRAHAM M. BENSON**
FAEGRE DRINKER RIDDLE &
REATH LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**MARILYN S. MEIGHEN**
ATTORNEY AT LAW
Carmel, IN

**BRIAN A. CUSIMANO**
ATTORNEY AT LAW
Indianapolis, IN



FILED

Sep 30 2024, 4:03 pm

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| THOMAS & NANCY CRANDALL, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) Case No. 23T-TA-00004 |
| | ) |
| BARTHOLOMEW COUNTY ASSESSOR, | ) |
| | ) |
| Respondent. | ) |

## ON APPEAL FROM A FINAL DETERMINATION OF
## THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**September 30, 2024**

MCADAM, J.

---

[1] After the appeal was filed and all briefing was completed, the Petitioners' original counsel, Melissa G. Michie, joined the law firm representing the Amici. Following this, Ms. Michie entered an appearance on behalf of the Amici Curiae and attorneys from that firm entered appearances on behalf of the Petitioners. *See Crandall v. Bartholomew Cnty. Assessor*, Case No. 23T-TA-00004 (Ind. Tax Ct. June 21, 2024) (order granting the Petitioners' and the Amici's unopposed request to have their chosen firm represent them during the oral argument).)

Since 2009, Indiana's burden-shifting statute has required assessors to bear the burden of proof in property tax appeals when a property's assessed value increases by more than 5% over the prior year. The Legislature revisited this statute in 2022, repealing it and replacing it with a revised version applicable to appeals filed after March 21, 2022. This case concerns the limited set of cases subject to the repealed version of the burden-shifting statute that were pending at the time the repeal took effect. Last year, this Court determined that the repealed version continued to apply to administrative appeals pending before the Indiana Board of Tax Review when the legislative enactment took effect. The parties in this case disagree whether that earlier decision should be applied to appeals, like those in this case, that were pending but not yet heard on the merits by the Board before the effective date of the legislative enactment. After review, the Court reaffirms the earlier opinion and holds that it fully resolves this case.

**FACTS AND PROCEDURAL HISTORY**

Thomas and Nancy Crandall own a home situated on nearly an acre of lakefront property on Grandview Lake in Columbus, Indiana. The Bartholomew County Assessor initially assigned an assessed value of $1,608,900 to their property for 2020. Later, after a review of all Grandview Lake properties, the Assessor increased this assessment to $1,888,800 for 2020 and assessed the property at $1,939,800 for 2021.

The Crandalls appealed each year's assessment, first to the Bartholomew County Property Tax Assessment Board of Appeals on June 15, 2021, and then to the Indiana Board on January 6, 2022. The Board conducted a hearing on the merits on October 6, 2022, after denying the Crandalls' motion to vacate the hearing date due to

2

uncertainty over which version of the burden-shifting statute applied to their appeals – Indiana Code § 6-1.1-15-17.2 ("Section 17.2"), repealed on March 21, 2022, or Indiana Code § 6-1.1-15-20 ("Section 20"), enacted on the same date.

At the hearing, the parties grappled with the question of which version of the burden-shifting statute should govern, ultimately focusing on Section 17.2, agreeing that Section 20 did not apply. The central point of contention then became whether Section 17.2 applied to the Crandalls' case and, if so, its implications. The Crandalls argued that Section 17.2 remained applicable despite its repeal, as their Indiana Board appeals were filed months before the statute's repeal, among other factors. The Crandalls chose not to present any independent valuation evidence and instead argued that both assessments should revert to the initial 2020 valuation of $1,608,900 because the Assessor failed to meet her burden under Section 17.2.

The Assessor opposed the Crandalls' position and argued that Section 17.2 did not apply due to the timing of the Indiana Board hearing. She asserted that the hearing on the merits was the procedural event that triggered Section 17.2's application, a principle previously advanced by the Indiana Board, and that because the hearing occurred after the statute's repeal, the statute no longer applied. She therefore contended that the Crandalls' assessments should remain unchanged because they presented no evidence of value and her appraisal evidence supported the current assessments.

The Indiana Board's final determination largely aligned with the Assessor's position. It concluded that, because Section 17.2 had been repealed before the hearing on the merits, it did not apply to the Crandalls' appeals and the burden of proof rested

3

with the Crandalls, not the Assessor. The Board ultimately determined that the appraisals supported the assessments and, accordingly valued the Crandalls' property at $1,830,000 for 2020 and $1,940,000 for 2021 to align with the appraisals.

The Crandalls then initiated this original tax appeal, arguing that the Board's final determination was contrary to law because the Assessor should have borne the burden of proof during the administrative proceedings under Section 17.2. After the parties filed their briefs addressing the merits, this Court issued a decision in a separate case, holding that Section 17.2 continued to apply to administrative appeals pending before the Board as of its repeal date of March 21, 2022. *See Elkhart Cnty. Assessor v. Lexington Square, LLC*, 219 N.E.3d 236, 243-46 (Ind. Tax Ct. 2023). The Crandalls subsequently sought leave to submit additional briefing on the impact of *Lexington Square* on their case. The Court granted their request, established a supplemental briefing schedule, and held oral argument.

## STANDARD OF REVIEW

This Court's review of Indiana Board decisions is governed by Indiana Code § 33-26-6-6, the provisions of which closely mirror those controlling judicial review of administrative decisions governed by Indiana's Administrative Orders and Procedures Act ("AOPA"). *Compare* IND. CODE § 33-26-6-6(e) (2024) *with* IND. CODE § 4-21.5-5-14(d) (2024). Under Indiana Code § 33-26-6-6, parties seeking to overturn a final determination of the Indiana Board bear the burden of demonstrating its invalidity. I.C. § 33-26-6-6(b). Challengers must demonstrate that they have been prejudiced by a final determination of the Indiana Board that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege,

4

or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. I.C. § 33-26-6-6(e).

**DISCUSSION**

Prior to 2009, the burden of proof in property tax assessment challenges invariably fell on the taxpayer. *See, e.g.*, *Orange Cnty. Assessor v. Stout*, 996 N.E.2d 871, 873 (Ind. Tax Ct. 2013). Then, in 2009, the Legislature introduced a burden-shifting provision, shifting the burden to an assessing official when an assessment increased by more than 5% from the previous year. *See* Pub. L. No. 182-2009(ss), § 111, 2009 Ind. Acts 2005, 2374-78. Since its enactment, this provision has been amended or repealed and reenacted four times, excluding the most recent adjustments in 2022. Each iteration has retained the burden-shift and the 5% threshold as the trigger. *See* Pub. L. No. 172-2011, §§ 30, 32, 2011 Ind. Acts 1969, 2010-14, 2016; Pub. L. No. 6-2012, §§ 42, 44, 2012 Ind. Acts 31, 78; Pub. L. No. 97-2014, § 2, 2014 Ind. Acts 1117, 1117-19; Pub. L. No. 121-2019, § 13, 2019 Ind. Acts 1491, 1518-19. As of 2014, the provision has also included guidance on calculating the 5% increase, exemptions for increases due to certain changes to the property or its use, and a reversionary clause requiring the assessment to revert to the prior year assessment if the burden of proof is not met. *See* Pub. L. No. 97-2014, § 2.

In 2022, the Legislature enacted a fifth set of changes to the burden-shifting provision as part of a single legislative enactment – House Enrolled Act 1260 ("HEA 1260"). Pub. L. No. 174-2022, §§ 32, 34, 2022 Ind. Acts 2298, 2346-49. As part of that legislation, the General Assembly simultaneously repealed Section 17.2 (the old

burden-shifting framework) and enacted Section 20 (the new burden-shifting framework) as its replacement. *Id.* Both actions took effect simultaneously on March 21, 2022. *Id.* (indicating that both actions were "effective upon passage"). The legislation included a provision in the newly added section (Section 20) specifying that it would "appl[y] only to appeals filed after the effective date of [the legislation]" but was silent about the continued applicability of Section 17.2. *See* Pub. L. No. 174-2002, § 34. The new statute (Section 20), consistent with previous amendments, retains the central elements of the burden-shifting provision, including the 5% threshold, the burden-shifting requirement, and the reversionary clause specifying that an assessment reverts to the prior year assessment if the burden of proof is not met. *See Lexington Square*, 219 N.E.3d at 242. At the same time, Section 20 "eliminates the requirement that to meet [the burden of proof], the assessor's evidence must 'exactly and precisely' conclude to the original assessment" and "allows the Indiana Board to determine the correct assessment based on evidence presented by both parties[.]" *Id.* (emphasis omitted).

This Court first examined the implications of HEA 1260's simultaneous repeal and replacement of the burden-shifting statute in 2023 in the *Lexington Square* case. *See id.* at 243-46. The issue there was whether Section 17.2 applied to appeals pending before the Board at the time of its repeal or whether the repeal created a gap, leaving no burden-shifting statute applicable to those pending administrative proceedings. *See id.* at 243. The assessor in that case argued, among other things, that Section 17.2 ceased to apply to the Indiana Board's proceedings on the date of its repeal, just three days before the Board issued its final determination, because HEA 1260 lacked a saving clause expressing the Legislature's intent as to pending cases. *Id.*

6

The Court rejected the assessor's arguments, holding that Section 17.2 applied to appeals pending before the Board at the time it was repealed. *See id.* at 246. In reaching its conclusion, the Court relied on long-standing precedent that "an express savings clause is not required to prevent the destruction of rights existing under a repealed statute if the Legislature's intention to preserve and continue those rights is otherwise clearly apparent." *Id.* at 243-44 (emphasis and citations omitted). The Court then looked to ordinary rules of statutory construction and concluded that, when Section 17.2 and Section 20 are construed together, "it is clearly apparent that the Legislature simply intended that Indiana Code § 6-1.1-15-17.2 would not apply to appeals filed after its repeal date of March 21, 2022." *See id.* at 244 (emphasis omitted). Thus, the Court concluded, Section 17.2 "continued to apply to appeals . . . that had been filed before the repeal of [Section 17.2] and were still pending" at the time the repeal took effect. *Id.* The Court found "reinforce[ment]" for its conclusion in the principle that legislation generally operates prospectively, noting that HEA 1260 did not include "explicit language . . . indicating an unequivocal and unambiguous retrospective intent" to apply the repeal of Section 17 retroactively. *Id.* at 244, 245 (internal quotation marks and citation omitted). To apply the repeal retroactively, the Court noted, would require "[a] re-do in every single one of the still-pending cases . . . to provide taxpayers an opportunity to develop and implement new litigation strategies aligned with the new allocation of the burden of proof." *See id.* at 246.

On its face, *Lexington Square* supplies the answer in this case. It expressly considered whether Section 17.2 should apply to cases pending at the time HEA 1260's repeal of Section 17.2 took effect. Here, the Crandalls' appeals had been pending for

7

more than two months before the March 21, 2022, repeal date, and thus *Lexington Square* directly applies. The Assessor contends, however, that a different result is warranted because *Lexington Square* leaves room for further analysis regarding the applicability of Section 17.2 to cases like this one in which a hearing was not conducted prior to the repeal. She urges the Court to confine *Lexington Square* to its facts (1) because the decision failed to identify any vested right sufficient to avoid application of the so called "obliteration doctrine" and (2) because she contends that Section 17.2 is a procedural law and therefore any changes to it apply to pending appeals. The Assessor maintains that "*Lexington Square* cannot be binding when this case raises different issues and arguments calling for analyses not previously undertaken." (Resp't Sur-surreply Br. at 6.) Consideration of any of these points, she contends, compels a different conclusion here, where the hearing on the merits had not occurred before the repeal of Section 17.2, and the Court should hold that Section 17.2 does not apply, leaving the burden of proof with the taxpayer.

### *Lexington Square* did not require the identification of a vested right

The Assessor first argues that *Lexington Square* "inharmoniously . . . concludes that repealing [Section] 17.2 extinguished a vested right of taxpayers" without providing any "substantive explanation or argument . . . about the existence of [that] vested right." (Resp't Sur-surreply Br. at 5.) She asserts that the decision "does not engage in an analysis of what vested rights actually are much less why any right to a particular process is created by a burden-shifting law." (Resp't Sur-surreply Br. at 7-8.) As a result, she concludes that *Lexington Square* is not binding in this case.

The Assessor, however, misapprehends the reasoning of *Lexington Square*. In

8

that case, the Court considered two related doctrines for determining the effect of a repealed statute on pending matters. The first is the so-called "obliteration doctrine," which holds that "the repeal of a statute without a savings clause, where no vested right is impaired, completely obliterates it, and renders the same as ineffective as if it had never existed." *Lexington Square*, 219 N.E.3d at 243 (collecting cases) (internal quotation marks, brackets, and footnote omitted). The second is an exception to the first, which holds that "an express savings clause is not required to prevent the destruction of rights existing under a repealed statute if the Legislature's intention to preserve and continue those rights is otherwise clearly apparent." *Id.* at 243-44 (collecting cases) (emphasis omitted). The Court examined whether the Legislature's intent was clearly apparent based on the text of HEA 1260 and concluded that it was. *See id.* at 244 ("The best evidence of legislative intent is found in the actual statutory language at issue. . . . [The] statutory language must be construed in accordance with the entire context of the act in which it is a part and also in harmony with any other statutes that apply to the same subject matter.") (citations omitted). It determined that, based on the entirety of the legislative enactment, the Legislature did not intend to rescind the statutory rights created by Section 17.2 as to pending cases. *Id.*

The Court did not determine that Section 17.2 continues to apply to pending appeals because not applying it would impair a vested right. The "rights" that the Court refers to in *Lexington Square* are the *statutory* rights created by Section 17.2 (e.g., the taxpayer's right to have the burden of proof shift to the assessing official in any review or appeal of an assessment increasing by more than 5% over the prior year, the right to require the assessor to prove the correct assessment, and the right to have the

9

assessment revert to the prior year assessment if the assessor fails to meet the burden of proof). *See id.* at 241-44. When viewed through the legal framework applied by the Court in *Lexington Square*, it is apparent that no vested right analysis was necessary to support the Court's conclusion. Consequently, the Assessor's complaints regarding the lack of substantive explanation about vested rights do not undermine *Lexington Square's* applicability.

**Section 17.2 is not a procedural law**

The Assessor next argues that *Lexington Square* does not consider whether Section 17.2 is a procedural or substantive law. (*See* Resp't Sur-surreply Br. at 6-7.) She contends that Section 17.2 is procedural in nature and that "any changes to [such laws] apply even when they occur during the pendency of a case." (Resp't Sur-surreply Br. at 7.) She concludes that, as a procedural law, the repeal of Section 17.2 applies immediately regardless of other considerations.

The Assessor correctly notes that a "[p]rocedural law 'prescribes the method of enforcing a right or obtaining redress for the invasion of that right' while [a] substantive law 'creates, defines, and regulates rights.'" (Resp't Sur-surreply Br. at 6 (quoting *Morrison v. Vasquez*, 124 N.E.3d 1217, 1222 (Ind. 2019)).) However, the Indiana Supreme Court has recognized that "[e]xcept at the extremes, the terms 'substance' and 'procedure' precisely describe very little except a dichotomy, and what they mean in a particular context is largely determined by the purposes for which the dichotomy is drawn." *Church v. State*, 189 N.E.3d 580, 589 (Ind. 2022) (quoting *Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988)) (internal quotation marks omitted). "And even if statutes establishing substantive rights are 'packaged in procedural wrapping,' that does

10

not alter their true nature." *Id.* (quoting *State ex rel. Loyd v. Lovelady*, 840 N.E.2d 1062, 1064 (Ohio 2006)). To that end, the analysis requires more than "a mechanical test that simply stops when it finds a process[.]" *Id.* at 590 (citation omitted). The analysis requires "a more thoughtful . . . look[] at the statute's predominant objective." *Id.* (citation omitted). "If the statute predominately furthers judicial administration objectives, the statute is procedural. But if the statute predominately furthers public policy objectives involving matters other than the orderly dispatch of judicial business, it is substantive." *Id.* (internal quotation marks and citation omitted).

Under this test, Section 17.2 is a substantive law and embodies a legislative policy judgment that assessment increases greater than 5% are unique and require heightened scrutiny. Rather than prohibit such increases outright, it reverses the typical course of an appeal whereby the taxpayer must disprove the assessment and instead requires the assessor to justify increases greater than 5%. IND. CODE § 6-1.1-15-17.2(a) (2022) (repealed 2022). Section 17.2 requires the assessor to prove that the assessment is "correct." I.C. § 6-1.1-15-17.2(b). The assessor's burden to prove correctness under Section 17.2 is heavy, requiring the assessor to not only provide evidence of value in the first instance but also to prove that the assessment is "exactly and precisely" correct. *See Southlake Indiana, LLC v. Lake Cnty. Assessor*, 181 N.E.3d 484, 489 (Ind. Tax Ct. 2021) ("[A]ny finding that the [assessor's] appraisal is 'lacking' renders it insufficient to prove that the assessment is correct.") (citation omitted), *review denied*. That burden is more than just a burden of production. *See Southlake Indiana, LLC v. Lake Cnty. Assessor*, 174 N.E.3d 177, 180 (Ind. 2021) (explaining that the burden of proof under Section 17.2 requires more than just presenting enough evidence

11

on an issue to have that issue decided by the fact-finder (i.e., burden of production)). The taxpayer, on the other hand, is not required to present any evidence or prove any value. *See* I.C. § 6-1.1-15-17.2(b). And, even if a taxpayer chooses to do so, Section 17.2 diverges significantly from a regular appeal by requiring the assessor's evidence to stand alone in the effort to prove the assessment correct. *See Southlake*, 181 N.E.3d at 489 (providing that "an assessor's [evidence] must be examined on a stand-alone basis") (internal quotation marks and citation omitted). The taxpayer's evidence cannot be used to rehabilitate the assessor's evidence. *Id.* Finally, Section 17.2 provides that, if the assessor fails to prove their assessment is correct, the taxpayer is entitled to have the assessment revert to the prior year value. I.C. § 6-1.1-15-17.2(b). This differs significantly from regular appeals not implicating Section 17.2 where the assessment remains in place if the taxpayer is unable to prove a different value. *See, e.g.*, *Piotrowski BK #5643, LLC v. Shelby Cnty. Assessor*, 177 N.E.3d 127, 132-35 (Ind. Tax Ct. 2021) (upholding a taxpayer's assessment when the taxpayer failed to meet the burden of proof).

While Section 17.2 bundles its public policy objectives in a procedural packaging, together its provisions combine to accomplish more than just the orderly dispatch of judicial business. Indeed, Section 17.2 specifically exempts assessment increases greater than 5% if they are due to renovations or improvements or changes in zoning or usage. I.C. § 6-1.1-15-17.2(c). Such an exemption would be unnecessary if the only goal were to ensure fair and efficient judicial administration. The setting aside of such increases because they were precipitated by a change to the property implies that the Legislature considers assessment increases greater than 5% for other reasons to

require special consideration. Moreover, assessments involving increases greater than 5% are not, as a practical matter, different than assessments involving lesser increases or even decreases. While the magnitude of the changes may differ, the evidence needed to prove value is the same. It follows then that appeals of those assessments do not require different processes. In both instances, the objective is to uncover the true tax value of the property based on its market value-in-use. *See, e.g.*, *Piotrowski*, 177 N.E.3d at 132-33; *Eckerling v. Wayne Twp. Assessor*, 841 N.E.2d 674, 677 (Ind. Tax Ct. 2006) (providing that Indiana's property assessment system, unchanged in its goal since 2002, is designed to consistently prioritize the accurate determination of a property's market value-in-use"); 50 IND. ADMIN. CODE 2.4-1-1(c) (2024) (stating that "[w]hether an assessment is correct shall be determined on the basis of whether, in light of the relevant evidence, it reflects the property's [market value-in-use]") (emphasis added). Yet, Section 17.2 creates an entirely different framework for appeals involving only certain types of assessment increases greater than 5% (i.e., those not due to renovations or improvements or to changes in zoning or use). As such, the Court finds that while Section 17.2 may have procedural elements, it predominately furthers public policy objectives beyond the orderly dispatch of judicial business, making it a

substantive law.[2,3]

Even if Section 17.2 were procedural in nature, it is well-established that procedural changes to statutes are not required to be applied to pending matters. *See State v. Pelley*, 828 N.E.2d 915, 919 (Ind. 2005) ("It has long been the law in this jurisdiction that although statutes and rules concerning procedural and remedial matters may be made to operate retroactively, it is not the case that they must apply retroactively.") (internal quotation marks, emphases, and citation omitted). The retroactive application of procedural or remedial statutes is the exception, as these laws are typically applied prospectively unless strong and compelling reasons justify otherwise. *Id.*; *accord Indiana Bureau of Motor Vehicles v. Watson*, 70 N.E.3d 380, 385 (Ind. Ct. App. 2017). Here, the Assessor has not identified any strong or compelling reasons to apply the repeal of Section 17.2 to pending appeals even if it were a

---

[2] Aside from the other rights provided by Section 17.2, the allocation of the burden of proof itself may be enough to support finding the provision to be substantive. *See, e.g.*, *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014) ("[W]e have held that the burden of proof is a substantive aspect of a claim. . . . [T]he assignment of the burden of proof is a rule of substantive law[.] . . . [T]he burden of proof . . . [is] part of the very substance of [the plaintiff's] claim and cannot be considered a mere incident of a form of procedure[.]") (internal quotation marks and citations omitted).

[3] The Assessor claims that the Court has "ruled that [the] burden shift is procedural because it 'applies to the process and procedure of appeals alone, not to the mechanics of valuing property as of a certain assessment date.'" (Resp't Br. at 8 (quoting *Orange Cnty. Assessor v. Stout*, 996 N.E.2d 871, 875 (Ind. Tax Ct. 2013)).) The *Stout* decision, however, does not support the Assessor's contention. *Stout* was addressing a claim by an assessor that the burden-shifting statute applied as of the assessment date. *Stout* at 875 ("[T]he Assessor's argument fails because it is premised on the belief that the statutory 'trigger' for shifting the burden of proof from the taxpayer to an assessing official is the assessment date."). Based on the plain language of the statute, the Court concluded that "the burden of proof shifts from the taxpayer to an assessing official *when* a taxpayer files an appeal on an assessment that increased by more than 5% from one year to the next." *Id.* (citation omitted). It explained that the burden-shifting statute is concerned with appeals and not with the assessment process. *Id.* ("This shift in the burden of proof applies to the process and procedure of appeals alone, not to the mechanics of valuing property as of a certain assessment date."). *Stout* did not engage in any analysis of whether the burden-shifting statute was procedural or substantive in nature.

procedural law. Furthermore, rules of construction must yield to the "clearly apparent" intent of the Legislature which, as *Lexington Square* concludes, is for Section 17.2 to apply to cases pending at the time of its repeal. *See Lexington Square*, 219 N.E.3d at 243-46.[4]

## CONCLUSION

Having examined the Assessor's arguments, the Court is unpersuaded that *Lexington Square* is unsound. The Court, therefore, reaffirms the holding of *Lexington Square* and holds that Section 17.2 continues to apply to Indiana Board appeals that were filed on or before its repeal on March 21, 2022. The Court REVERSES the final determination of the Indiana Board that valued the Crandalls' property at $1,830,000 for 2020 and $1,940,000 for 2021 and REMANDS this matter to the Indiana Board for action consistent with this opinion.

---

[4] The Assessor also argues that the Board did not apply the repeal of Section 17.2 retroactively in this case. (*See* Resp't Sur-surreply Br. at 11.) She maintains that Section 17.2 does not apply until the Board conducts a hearing on the merits, which did not occur in this case until after the repeal of Section 17.2 took effect. She contends that by refusing to apply Section 17.2 to the Crandalls' appeals, the Board only "applied the law that existed at the time of the hearing." (Resp't Sur-surreply Br. at 11 (citation omitted).) Even if the Court were to adopt the Assessor's position, it would not change the outcome dictated by *Lexington Square's* holding and application in this case. As noted above, *Lexington Square* determined that it is clearly apparent from HEA 1260 that Section 17.2 "continued to apply to appeals . . . that had been filed before [its] repeal . . . and were still pending" at the time the repeal took effect. *Elkhart Cnty. Assessor v. Lexington Square*, 219 N.E.3d 236, 244 (Ind. Tax Ct. 2023). As *Lexington Square* notes, application of Section 17.2 to appeals filed before its repeal is consistent with the well-established principle that legislative enactments do not apply retroactively. *Id.*